STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey S. GIBSON, Defendant-Appellant.†

Court of Appeals

*No. 00–2399–CR. Submitted on briefs January 16, 2001.—Decided February 6, 2001.*

## 2001 WI App 71

(Also reported in 626 N.W.2d 73.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ann N. Knox-Bauer* of Stanley.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Jeffrey Gibson appeals from his eighth conviction for operating a motor vehicle while under the influence of an intoxicant, contrary to WIS. STAT. § 346.63(1)(a).[1] Gibson contends that the trial court erred by denying his motion to suppress the blood test results because the blood was taken after he had initially refused the test. He reasons that the implied consent statute provides the exclusive remedy for an OWI suspect's refusal to submit to a chemical test. Additionally, he contends that after the evidence was completed, the trial court erred by granting the State's motion to amend the information to allow the jury to consider whether he was under the influence of an intoxicant, a controlled substance, or both. We reject his arguments and affirm the conviction.

¶ 2. The underlying facts are undisputed. The arresting officer testified that in the early morning hours of May 6, 1999, she observed Gibson's car weaving from side to side on the highway and then suddenly jerking back to the center of the lane. As she followed the car, it suddenly made a right-hand turn in front of Gibson's house and stopped. When the officer first approached Gibson, she noted that he was very slow to react, had bloodshot eyes, slurred speech and emanated a strong odor of alcohol. The officer then had

---

[1] All references to the Wisconsin Statutes are to the 1997–1998 version unless otherwise noted.

Gibson perform a series of field sobriety tests, all of which indicated that he was impaired.

¶ 3. After Gibson was arrested for OWI, he was taken to a hospital for a blood sample. There, the officer read the Informing the Accused form to Gibson who initially refused to take the requested blood test and asked whether he could instead take a different test. The officer told him no and that the penalties would be increased if he refused the test. She also indicated that there was no other way he was going to be able to get out of the situation other than taking the blood test. Consequently, Gibson indicated that he would submit to the test. The blood test result showed .248 grams of alcohol per 100 milliliters of blood.

## DISCUSSION

### I. ADMISSION OF THE BLOOD TEST RESULT

¶ 4. Gibson argues that the blood test result was erroneously admitted into evidence because he had initially refused to take a blood test, and the only penalty for refusing under the implied consent law is the revocation of operating privileges. It is important to note that Gibson does not challenge the taking of his blood as a violation of *State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993).[2] Instead, he argues

---

[2] The *Bohling* court, relying on *Schmerber v. California*, 384 U.S. 757, 770–71 (1966), held that when there are exigent circumstances,

> a warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood

that WIS. STAT. § 343.305(9)(a) provides the exclusive remedy for a refusal to submit to a chemical test. This section provides in part:

> **(9)** REFUSALS; NOTICE AND COURT HEARING. (a) If a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately take possession of the person's license and prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege.

¶ 5.   Gibson also relies on language in *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277, 542 N.W.2d 196 (Ct. App. 1995), which suggests an OWI suspect has a right to refuse a chemical test, albeit subject to consequences:

> Every driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content. Section 343.305(2), STATS. A person may revoke consent, however, by simply refusing to take the test. *See* § 343.305(9). Thus, a driver has a "right" not to take the chemical test (although there are certain risks and consequences inherent in this choice).

From this "right," and by analogy to *Miranda v. Arizona*, 384 U.S. 436 (1966),[3] Gibson reasons that "when

sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993) (footnote omitted). Gibson does not contend that the four *Bohling* criteria were not satisfied under the facts of this case.

[3] This court rejected an analogy to *Miranda v. Arizona*, 384 U.S. 436 (1966), in the context of the Informing the Accused form's sufficiency.

> As we discussed in *Quelle*, unlike *Miranda* warnings which have constitutional underpinnings, the "informing the accused"

an arrestee refuses a chemical test, police efforts to compel submission to such a test must cease, except as specified by statute."

¶ 6. This issue presents a legal question, specifically whether the implied consent law provides the exclusive remedy upon a refusal to submit to evidentiary testing so that law enforcement cannot obtain evidence by other legal means. This court decides the issue de novo. *See State v. Edgeberg*, 188 Wis. 2d 339, 344–45, 524 N.W.2d 911 (Ct. App. 1994); *see also State v. Reitter*, 227 Wis. 2d 213, 223, 595 N.W.2d 646 (1999) (Application of the implied consent statute to an undisputed set of facts, like any statutory construction, is a question of law that the appellate courts review de novo.).

¶ 7. We must keep in mind that the legislature enacted the implied consent law to combat drunk driving. *Reitter*, 227 Wis. 2d at 223. The law was designed to facilitate the collection of evidence against drunk drivers in order to remove them from the State's highways by securing convictions, not to enhance the rights of alleged drunk drivers. *Id.* at 224; *State v. Crandall*,

requirement is purely statutory. The Supreme Court in *Schmerber v. California*, 384 U.S. 757 (1966), held that a state-compelled blood test following a person's arrest for OMVWI does not violate the Fourth, Fifth or Fourteenth Amendments to the U.S. Constitution. Thus, an arrestee's understanding or comprehension of the information required to be provided under WIS. STAT. § 343.305(4) is not needed to legitimize a knowing and informed waiver of constitutional rights, as is the case with *Miranda* warnings. We conclude that the legislature could have chosen to implement the implied consent law without directing law enforcement to inform arrestees of any of the information the statute specifies.

*State v. Piddington*, 2000 WI App 44, ¶ 16, 233 Wis. 2d 257, 607 N.W.2d 303 (citation omitted).

133 Wis. 2d 251, 258, 394 N.W.2d 905 (1986). Given the legislature's intentions in passing the statute, courts construe the implied consent law liberally. *Reitter*, 227 Wis. 2d at 223–25.

¶ 8.   Gibson's reliance on *Quelle* is misplaced for two reasons. First, *Quelle* did not address the issue at hand; it was a "subjective confusion" case. The court therefore did not have an opportunity to evaluate its observation in light of the arguments Gibson raises. It did not consider whether a suspect's refusal must be honored in all instances. Thus, when placed in proper context, it appears that the *Quelle* court merely concluded that an OWI suspect has the right not to voluntarily take a test, by "revoking" consent. This construction comports with cases that consistently hold that, under appropriate circumstances, a suspect's blood may be withdrawn regardless of consent. *See Schmerber v. California*, 384 U.S. 757, 770–71 (1966); *State v. Thorstad*, 2000 WI App 199, ¶ 2, 238 Wis. 2d 666, 618 N.W.2d 240; *Bohling*, 173 Wis. 2d at 533–34.

■

¶ 9.   Second, and most important, under Gibson's interpretation this passage from *Quelle* directly contradicts our supreme court's repeated holding that a driver in this state has no right to refuse to take a chemical test. "The consent is implied as a condition of the privilege of operating a motor vehicle upon state highways. By implying consent, the statute removes the right of a driver to lawfully refuse a chemical test." *State v. Zielke*, 137 Wis. 2d 39, 48, 403 N.W.2d 427 (1987) (citation omitted); *see also Reitter*, 227 Wis. 2d at 225 ("[D]rivers accused of operating a vehicle while intoxicated have no 'right' to refuse a chemical test."); *Crandall*, 133 Wis. 2d at 255 ("In Wisconsin there is no constitutional or statutory right to refuse" evidentiary

testing); *State v. Neitzel*, 95 Wis. 2d 191, 200–01, 289 N.W.2d 828 (1980). "The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Thus, the language in *Quelle* notwithstanding, Gibson does not have a right to refuse to submit to evidentiary testing.

¶ 10.   While at first blush it may arguably appear that the implied consent statute supplies the exclusive remedy for its violation, it does not follow that it precludes law enforcement from pursuing other constitutional avenues for collecting evidence of a traffic violation. In *Zielke*, 137 Wis. 2d at 41, the court held that WIS. STAT. § 343.305 does not limit the manner in which evidence is obtained to prove that a subject operated while intoxicated. It reasoned that the refusal to submit to a chemical test under § 343.305 is a civil matter and is a separate substantive offense from OWI under § 346.63(1). Importantly, the *Zielke* court held that the implied consent law did not provide the exclusive means by which police could obtain chemical test evidence of driver intoxication.[4] *Id.* at 41. The *Zielke* court concluded "that noncompliance with the procedures set forth in the implied consent law does not render chemical test evidence otherwise constitutionally obtained inadmissible at the trial of a substantive offense involving intoxicated use of a vehicle." *Id.*

¶ 11.   In *Thorstad*, 2000 WI App. 199 at ¶ 10, we concluded that *Bohling* does not require that the subject of the blood test give consent or voluntarily take

---

[4] From this premise, the court in *Zielke* concluded that evidence obtained without compliance with implied consent law procedures did not have to be suppressed. *State v. Zielke*, 137 Wis. 2d 39, 51–52, 403 N.W.2d 427 (1987).

the test, nor does *Bohling* thus depend on whether the subject of the blood test was deemed to have consented under WIS. STAT. § 343.305. Because the requirements of *Bohling* were satisfied, we concluded that the blood test in question constituted a reasonable search under the Fourth Amendment. *See Thorstad*, 200 WI App at ¶ 17. We arrived at this conclusion independent of any reference to the implied consent law. *See id.* at ¶¶ 10–17.

¶ 12.  Applying the rationale of *Bohling*, *Zielke* and *Thorstad*, we are satisfied that the implied consent statute does not restrict the police from using other constitutional means to collect evidence of the driver's intoxication. Because Gibson does not challenge the blood test as an unreasonable search in violation of the requirements set forth in *Bohling*, the trial court properly denied Gibson's motion to suppress the blood test result.

## II.  AMENDMENT OF THE INFORMATION

¶ 13.  Gibson contends that after the evidence was completed, the trial court improperly allowed the information to be amended to allow the jury to consider whether he was under the influence of an intoxicant, a controlled substance, or both.[5] The State moved to amend the information in response to Gibson's defense that a prescription drug he was taking, Percodan, could have affected his conduct during the sobriety testing and while he was driving. He concedes that the trial court, in its discretion, can allow the amendment of the information at any time during a trial unless the

---

[5] The original Information alleged only that Gibson was under the influence of an intoxicant.

amendment would be prejudicial to the defendant. *See* WIS. STAT. § 971.29(2); *State v. DeRango*, 229 Wis. 2d 1, 26, 599 N.W.2d 27 (Ct. App. 1999), *aff'd*, 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833. However, he claims it was prejudicial to amend the information because there was no evidence that he had enough Percodan in his system to impair him, nor was there any evidence that it was a controlled substance. We reject this argument.

¶ 14.  First, as the State observes, the defense was explicitly told prior to trial that the State would not mention Percodan, but that if the defense chose to do so, the State would ask for an amended information to conform to the evidence. Consequently, the amendment should have come as no surprise.

¶ 15.  Second, the amendment did not change the charged crime. There is no prejudice to a defendant when an amendment to the charging document does not change the crime charged, and when the alleged offense is the same and results from the same transaction. *State v. Koeppen*, 195 Wis. 2d 117, 123, 536 N.W.2d 386 (Ct. App. 1995). WISCONSIN STAT. § 346.63(1)(a) sets forth only one motor vehicle crime. It provides that no person may drive or operate a motor vehicle while under the influence of an intoxicant, a controlled substance, or any combination of an intoxicant and/or a controlled substance that renders the person incapable of safely driving. Here, the same crime was charged before and after the amendment and it arose from the same transaction.

¶ 16.  Finally, Gibson's blood alcohol content, .248%, provided the jury with more than sufficient evidence of impairment, regardless of the Percodan evidence. The evidence of blood alcohol content, cou-

pled with the arresting officer's observations of Gibson, satisfies us that the validity of the conviction was unaffected by the amendment to the information. *See* WIS. STAT. § 971.26.

*By the Court.*—Judgment and orders affirmed.