STATE of Wisconsin, Plaintiff-Appellant,

v.

Jay D. KRAJEWSKI, Defendant-Respondent-Petitioner.

Supreme Court

*No. 99–3165–CR. Oral argument November 8, 2001.—Decided July 10, 2002.*

2002 WI 97

(Also reported in 648 N.W.2d 385.)

For the defendant-respondent-petitioner there were briefs by *Christopher A. Mutschler* and *Anderegg & Mutschler, LLP,* Fond du Lac, and oral argument by *Rex Anderegg.*

For the plaintiff-appellant the cause was argued by *Jennifer E. Nashold,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. DAVID T. PROSSER, J. The issue presented in this case is whether the state may require a warrantless blood draw for alcohol concentration testing from a person who is arrested on probable cause for operating a motor vehicle while under the influence of an intoxicant (OWI), when the person refuses to submit to a requested blood test under the implied consent statute but offers to submit to a breath test in lieu of a blood test.

¶ 2. The circuit court for Jefferson County, Jacqueline R. Erwin, Judge, suppressed the results of the blood test administered to the defendant, Jay D. Krajewski, following his arrest for OWI. The circuit court

concluded that a non-consensual blood draw is unreasonable and unconstitutional when a defendant offers to submit to an available and less intrusive method of testing for blood alcohol concentration. The court of appeals reversed, determining that the defendant's case was controlled by this court's decision in *State v. Bohling,* 173 Wis. 2d 529, 494 N.W.2d 399 (1993). The court of appeals ruled that the warrantless blood draw met the requirements established in *Bohling* and was lawful. *State v. Krajewski,* No. 99–3165–CR, unpublished order at 3 (Wis. Ct. App. Dec. 5, 2000).

¶ 3. We accepted Krajewski's petition for review and hold that a warrantless nonconsensual blood draw from a person arrested on probable cause for a drunk driving offense is constitutional based on the exigent circumstances exception to the warrant requirement of the Fourth Amendment, even if the person offers to submit to a chemical test other than the blood test chosen by law enforcement, provided that the blood draw complies with the factors enumerated in *Bohling.* We conclude that the warrantless blood draw in this case was properly based on exigency and complied with factors enumerated in *Bohling.* Accordingly, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶ 4. The facts stated below are based upon testimony at preliminary and suppression hearings as well as stipulations by the parties, documents in the record, and the factual findings of the circuit court. For the purpose of reviewing the circuit court's decision to suppress Krajewski's blood test, the test results are not in dispute.

¶ 5. Wisconsin State Trooper Richard Torrez was on duty in the early morning hours of May 2, 1999. At

approximately 1:18 a.m., he stopped a Volkswagen Jetta traveling west on Interstate 94 near Johnson Creek in Jefferson County. The vehicle was driven by Jay Krajewski. Trooper Torrez observed the Krajewski vehicle traveling along the fog line on the right side of the highway. After húgging the fog line for approximately 1,000 feet, the vehicle veered toward the center of the highway, then moved back across the fog line close to the rumble strips for approximately 2,000 feet. The vehicle eventually traveled back across the fog line to the center of the right lane, then switched into the left lane, speeding up by 10 miles per hour as it changed lanes. Torrez followed Krajewski into the left lane, prompting the Krajewski vehicle to move back into the right lane where it subsequently exited the highway to enter a rest area. At that point, Torrez pulled Krajewski over for operating his vehicle erratically and in excess of the speed limit.

¶ 6. When Torrez approached the vehicle, Krajewski told him that he did not have a driver's license but had a state identification card. Torrez noticed that Krajewski's breath smelled of an intoxicant. Krajewski offered that he had consumed three or four beers in the prior 12 hours and had last consumed alcohol about four hours before he was stopped.[1] Krajewski told Torrez that he was driving from Milwaukee to Adams County to check on his parents who had left a phone message early in the morning of May 1, asking him to call them as soon as possible. Krajewski said he was worried about his parents because he had been unable to contact them during the day.

---

[1] Trooper Torrez testified that Krajewski later altered his story, saying that he had four or five beers and that he had finished drinking two hours before he was stopped.

¶ 7. Krajewski agreed to perform field sobriety tests. According to Torrez, Krajewski failed each of the three tests administered.[2] Krajewski then submitted to a preliminary breath test (PBT) pursuant to Wis. Stat. § 343.303 (1997–98).[3] The results indicated that the alcohol concentration in Krajewski's blood was 0.20.[4] Torrez arrested Krajewski for operating a motor vehicle while under the influence of an intoxicant, contrary to Wis. Stat. § 346.63(1)(a).[5]

¶ 8. Trooper Torrez testified at the suppression hearing that he was aware that Krajewski had four prior convictions for driving while intoxicated. He also knew that the State Patrol had a policy to request a blood sample for second and subsequent offenses. Consequently, Torrez transported Krajewski to Countryside Home (Countryside)—a county nursing home in Jefferson that administers blood draws—to obtain a blood sample.

---

[2] Krajewski does not contest the validity or the results of the field sobriety tests for the purposes of this appeal.

[3] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise specified.

[4] Wisconsin Stat. § 885.235(1)(a) provides that, " 'Alcohol concentration' means the number of grams of alcohol in 100 milliliters of a person's blood or the number of grams of alcohol in 210 liters of a person's breath."

[5] "[A]n alcohol concentration of 0.1 or more is prima facie evidence that [a person] was under the influence of an intoxicant." Wis. Stat. § 885.235(1g)(c). However, "[i]n cases involving persons who have 2 or more prior convictions, suspensions, or revocations . . . an alcohol concentration of 0.08 or more is prima facie evidence that [the person] was under the influence of an intoxicant." Wis. Stat. § 885.235(1g)(cd).

¶ 9. When they arrived, Torrez read the "informing the accused" warnings found in Wis. Stat. § 343.305(4), then asked Krajewski if he would submit to a blood draw. Krajewski refused. Krajewski testified that he told Torrez, "that I did not—that I had had a fear of needles and that I did not want to have blood withdrawn from me." Krajewski further testified that he offered to give either a breath or a urine sample "clearly at least twice."

¶ 10. When Trooper Torrez was told that Countryside's policy was not to draw blood from a person who did not consent to a blood draw, he decided to take Krajewski to Fort Atkinson Memorial Hospital, which he believed would draw blood from a non-consenting person. At the hospital, Torrez again read the informing the accused form to Krajewski. Torrez testified that Krajewski again refused to submit to a blood draw but said he would "dance circles" if he were allowed to contact his parents. Torrez took this to mean that Krajewski would submit to a blood draw if he could first check on his parents.

¶ 11. Sergeant Paul Wallace of the Jefferson County Sheriff's Department, one of four other officers who had been called to meet Torrez at the hospital,[6] then spoke to Krajewski, telling him that the officers were going to obtain a blood sample with or without his consent. Wallace testified that Krajewski told him that he wanted to contact his parents. According to Wallace, Krajewski stated that he did not want to take a test for alcohol concentration because if he submitted he would

---

[6] Krajewski testified that upon learning that he would be taken to a different facility for a blood draw, he told Torrez: "Well, you had better call some friends because I'm not going to give it willingly."

107

be "[expletive]." Sergeant Wallace told Krajewski that after the blood draw he would help Krajewski contact his parents.

¶ 12. Krajewski refused to submit but advised Sergeant Wallace that he would agree not to resist physically. A registered nurse obtained two blood specimens at approximately 3:25 a.m.[7] The resulting blood test showed that the alcohol concentration in Krajewski's blood was 0.219 grams per milliliter, significantly greater than the 0.08 limit for persons with two or more previous convictions, suspensions, or revocations. *See* Wis. Stat. § 885.235(1g)(cd). After the blood draw, Krajewski was taken to the Jefferson County Jail. Sergeant Wallace contacted Adams County authorities, who contacted Krajewski's parents. They in turn called to report that they were fine.

¶ 13. The state charged Krajewski with one count of operating a motor vehicle while intoxicated, as a fifth or subsequent offense, contrary to Wis. Stat. §§ 346.63(1)(a), 346.61 and 346.65(2)(e); one count of operating a motor vehicle with a prohibited alcohol concentration, as a fifth or subsequent offense, contrary to Wis. Stat. §§ 346.63(1)(b), 346.61 and 346.65(2)(e); and one count of operating after revocation, as a second offense, contrary to Wis. Stat. §§ 343.44(1) and 351.08.

¶ 14. After the preliminary hearing, Krajewski filed a motion to suppress the results of the blood test, alleging that the seizure of his blood had violated his rights under the state and federal constitutions.[8]

---

[7] The parties stipulated, for the purposes of the preliminary hearing, that the blood samples obtained by the registered nurse were obtained according to normal procedures.

[8] Krajewski also brought a motion claiming that Wisconsin's implied consent statute, Wis. Stat. § 343.305, is

¶ 15. Both Trooper Torrez and Sergeant Wallace testified that they could not remember whether Krajewski offered to submit to a breath or urine test. However, the circuit court stated in its order that "[Krajewski] testified unequivocally that he requested a breath test instead of a blood test due to his fear of needles." It found that Krajewski "asked to take a breath test based on fear of needles. A blood test was, nonetheless, taken pursuant to the officer's policy and stated intent to take it by force if necessary." The circuit court determined that Krajewski had impliedly consented to a blood test pursuant to Wis. Stat. § 343.305, but had withdrawn his consent. It found that the officers could have timely administered a breath test as requested, and that after initially refusing the blood test, Krajewski had submitted "under protest."

¶ 16. The circuit court acknowledged that under *Bohling,* "forcible blood draws were available under the exigent circumstances exception to the Fourth Amendment." However, relying upon *Nelson v. City of Irvine,* 143 F.3d 1196 (9th Cir. 1998), the court determined that exigent circumstances are not present when a defendant consents to undergo a test other than a blood test. It ruled that "[W]hen consent to a less intrusive seizure meets a coerced or forcible seizure, the latter method is unreasonable." It therefore granted Krajewski's motion to suppress. This was the order reversed by the court of appeals.

## II. STANDARD OF REVIEW

██

¶ 17. For the purposes of this appeal, there are no genuine issues of material fact. We are presented with

unconstitutional. The circuit court denied the motion, and Krajewski does not appeal the ruling.

the question whether the results of a test for alcohol concentration were obtained in compliance with the exigent circumstances exception to the warrant requirement of the Fourth Amendment to United States Constitution and Article I, Section 11 of the Wisconsin Constitution. This is a question of law that this court reviews de novo. *Bohling*, 173 Wis. 2d at 533.

## III. ANALYSIS

¶ 18. This case requires us to decide fundamental questions about the exigency exception to the warrant requirement of the Fourth Amendment[9] and its relationship to Wisconsin's implied consent statute.

A. Implied Consent

¶ 19. Wisconsin has enacted an implied consent statute for motor vehicle operators, Wis. Stat. § 343.305. A person who operates a motor vehicle in this state is deemed to have given consent to one or more tests of his or her blood, breath, or urine upon the request of a law enforcement officer if the person is arrested for a drunk driving offense. Wis. Stat. § 343.305(2).[10]

¶ 20. Under Wis. Stat. § 343.305(3)(a), a law enforcement officer may request that a person arrested for OWI provide one or more samples of the person's

---

[9] The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution are virtually identical. Both establish the right of persons to be secure from unreasonable searches and seizures. Consequently, this court interprets the two constitutional provisions in concert. *State v. Rutzinski*, 2001 WI 22, ¶ 13, 241 Wis. 2d 729, 623 N.W.2d 516; *State v. Richter*, 2000 WI 58, ¶ 27, 235 Wis. 2d 524, 612 N.W.2d 29.

[10] Wisconsin Stat. § 343.305(2) provides in relevant part:

blood, breath, or urine for testing. A law enforcement officer must then read the implied consent warning to the person, explaining the nature of implied consent, warning of the consequences of refusal to submit to a test of the officer's choice, warning about the consequences of a prohibited alcohol concentration, and informing the person of his or her right to request an alternative test. Wis. Stat. § 343.305(4); *State v. Piddington,* 2001 WI 24, ¶ 1 n.3, 241 Wis. 2d 754, 623 N.W.2d 528.

■

¶ 21. The "alternative test" referred to in the statute is not a test of the person's choice in lieu of the test requested by the officer. It is an additional test. The statute reads in part:

> If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

Wis. Stat. § 343.305(4).

¶ 22. If a person refuses to submit to the officer's requested test, the officer is required immediately to take possession of the person's license and prepare a

Any person who . . . operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(b).

notice of intent to revoke. Wis. Stat. § 343.305(9)(a). If a court later determines that the person improperly refused to provide the requested sample or samples for testing, the court is required to revoke the person's operating license for a period of at least one year.[11] Wis. Stat. § 343.305(10)(a) and (b)(2).

¶ 23. In this case, the circuit court found that Jay Krajewski "impliedly consented to the chemical testing of his blood by driving. He withdrew that consent and will suffer the consequences of his refusal if it is proved." The circuit court therefore concluded that "[t]he seizure was outside the provisions of § 345.305 [sic] Wis. Stats." The parties do not dispute the circuit court's finding that the blood draw in this case was not conducted pursuant to Wis. Stat. § 343.305.

B. Searches Outside Implied Consent Statute

¶ 24. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution recognize and protect the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."[12] U.S. Const. amend. IV. In most instances, searches by law enforcement should be conducted pursuant to a search warrant. *State v. Prober*, 87 Wis. 2d

---

[11] The length of the revocation is dependent upon the number of prior suspensions, revocations and convictions, as calculated under Wis. Stat. § 343.307. Wis. Stat. § 343.305(10).

[12] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

423, 433, 275 N.W.2d 123 (Ct. App. 1978). Searches conducted without a warrant are deemed unreasonable per se unless they fall within one of "a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55 (1971); *State v. Phillips,* 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998); *see also State v. Murdock,* 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990) (citing *Texas v. Brown,* 460 U.S. 730, 735–36 (1983) ("a few carefully delineated exceptions")). Two of the carefully delineated exceptions to the warrant requirement are consent searches and searches based on exigent circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *Schmerber v. State of California,* 384 U.S. 757, 771 (1966).

## C. Warrantless Searches

¶ 25. Wisconsin Stat. § 343.305 does not explicitly authorize the warrantless search of a driver who withdraws consent and refuses to provide a requested sample for testing under the implied consent statute. However, the text clearly recognizes the possibility of such a search if the search is based upon authority outside the statute. It states: "This section does not

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 to the Wisconsin Constitution provides:

Searches and seizures. SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

limit the right of a law enforcement officer to obtain evidence by any other lawful means." Wis. Stat. § 343.305(3)(c).

¶ 26. We considered this contingency in *State v. Zielke,* 137 Wis. 2d 39, 52, 403 N.W.2d 427 (1987). In *Zielke,* a police officer induced Zielke to provide a sample of his blood following his involvement in a fatal automobile accident. The procedures "in the implied consent law were concededly not followed." *Id.* at 40. The circuit court suppressed the results of the blood test, concluding that the implied consent law was the exclusive means by which police may obtain chemical test evidence of driver intoxication. *Id.* at 41. This court reversed, stating: "Chemical test evidence may be otherwise legally obtained if it is seized [1] pursuant to a valid search warrant, [2] incident to a lawful arrest, [3] under exigent circumstances supported by probable cause to arrest, or [4] with the consent of the driver." *Id.* at 52 (citations omitted). *See also State v. Gibson,* 2001 WI App 71, ¶¶ 8, 10, 242 Wis. 2d 267, 626 N.W.2d 73; *State v. Marshall,* 2002 WI App 73, 251 Wis. 2d 408, ¶¶ 7–12, 642 N.W.2d 571.

D. Exigent Circumstances

¶ 27. The search in this case was based on exigent circumstances supported by probable cause. The United States Supreme Court determined in *Schmerber,* 384 U.S. at 772, that a warrantless blood draw from a person arrested for driving while intoxicated was authorized under the exigent circumstances exception to the warrant requirement of the Fourth Amendment. The Supreme Court said: "We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Id.* at 770. The Court concluded

114

that the dissipation of alcohol in the blood stream constituted an emergency because it "threatened 'the destruction of evidence.' " *Id.* (quoting *Preston v. United States,* 376 U.S. 364, 367 (1964)).

¶ 28. One of the questions raised by *Schmerber* was whether the exigency created by the dissipation of alcohol in the blood stream justifies a warrantless blood draw in every case in which there is probable cause to arrest a person for OWI. Justice Brennan, writing for a deeply divided Court, avoided a clear answer to that question. He noted that Schmerber's involuntary blood test had been taken in a hospital environment, not a "station house." He added that, "Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'breathalyzer' test petitioner refused." *Id.* at 771.

¶ 29. The *Schmerber* opinion skirted such issues as whether the state is ever required to obtain a warrant for a lawfully arrested person's chemical test for alcohol concentration and whether the state is required to respect an arrested person's choice among chemical tests.

¶ 30. These questions were taken up in *State v. Bohling,* 173 Wis. 2d 529, 494 N.W.2d 399 (1993), in which this court expounded on the exigency required for a warrantless blood draw. In *Bohling,* the court examined the following issue:

> [W]hether the fact that the percentage of alcohol in a person's blood stream rapidly diminishes after drinking stops *alone* constitutes a sufficient exigency [under the relevant constitutional provisions] to justify a warrantless blood draw under the following circumstances: (1) the blood draw is taken at the direction of a law enforcement officer from a person lawfully arrested for

a drunk-driving related violation or crime, and (2) there is a clear indication that the blood draw will produce evidence of intoxication.

*Bohling,* 173 Wis. 2d at 533 (emphasis added).

¶ 31. This court concluded that under these circumstances, "the dissipation of alcohol from a person's blood stream constitutes a sufficient exigency to justify a warrantless blood draw." *Id.*

¶ 32. The court pounded home the point, explaining that *Schmerber* could be read in either of two ways: The rapid dissipation of alcohol in the blood steam alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for drunk driving; or the rapid dissipation of alcohol in the blood stream, coupled with other factors such as an accident, hospitalization, and the lapse of two hours, constitutes exigent circumstances for a warrantless blood draw. *Id.* at 539. The court chose the former interpretation, thereby rejecting a requirement that an officer seek a search warrant in the period immediately following arrest.[13]

¶ 33. The court stated the test:

[A] warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested

---

[13] The court cited a number of court decisions interpreting *Schmerber* to support its conclusion: *State v. Bentley,* 92 Wis. 2d 860, 861–62, 286 N.W.2d 153 (Ct. App. 1979); *United States v. Reid,* 929 F.2d 990, 991–92 (4th Cir. 1991); *State v. Baker,* 502 A.2d 489, 493 (Me. 1985); *Gregg v. State,* 374 So. 2d 1301, 1302 (Miss. 1979); *State v. Milligan,* 748 P.2d 130, 134–35 (Or. 1988). *State v. Bohling,* 173 Wis. 2d 529, 542–44, 494 N.W.2d 399 (1993).

for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Id.* at 533–34.

¶ 34. Krajewski attempts to reframe this analysis, asserting that *Bohling* is "not instructive" in deciding this case. He concedes that the rapid dissipation of alcohol in a person's bloodstream creates an exigency because it threatens the destruction of evidence and that this exigency justifies a forcible blood draw when the person refuses to submit to any chemical test. However, he asserts that once the person offers to submit to a different chemical test, the exigency disappears and the officer may not proceed with an involuntary test without a search warrant.

¶ 35. Krajewski contends that, absent a search warrant, a law enforcement officer has authority to order an involuntary blood draw from an arrested person who has requested a different chemical test *only* when: (a) there is not enough time under Wis. Stat. § 885.235 to honor the request;[14] (b) the person has made an unreasonable request for a different chemical

---

[14] Wisconsin Stat. § 885.235, Chemical tests for intoxication, provides in part:

(1g) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant or had a prohibited alcohol concentration or a specified alcohol concentration while operating or driving a motor vehicle . . . evidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis of a sample of the person's blood or urine or evidence of the amount of alcohol in the person's breath, is admissible on the issue of whether he or she was under the influence of an intoxicant or had a prohibited alcohol concentra-

test (such as a test of chemical deposits on hair); or (c) the person has made no request at all for a different chemical test. A person's "offer to submit to an alternative form of testing" is the *sine qua non* of Krajewski's "dissipating exigency" theory.

¶ 36. We reject this analysis. Krajewski is correct in asserting that the relevant basis for exigency here is that evidence is likely to be destroyed. *See State v. Smith,* 131 Wis. 2d 220, 230, 388 N.W.2d 601 (1986). We do not agree, however, that the exigency disappears as soon as a person agrees to submit to a breath test as opposed to a blood test.[15]

---

tion or a specified alcohol concentration *if the sample was taken within 3 hours after the event to be proved* (emphasis added).

[15] The circuit court relied heavily on *Nelson v. City of Irvine,* 143 F.3d 1196 (9th Cir. 1998), for the principle that exigent circumstances are negated when a defendant offers to submit to a test other than the test requested by law enforcement. *Nelson* can be distinguished on its facts. We believe that, to the extent its opinion went beyond the special facts of the case, the *Nelson* court was not correct in its explanation of exigency.

*Nelson* involved a California implied consent statute that granted persons arrested for driving while intoxicated the choice of which type of sample they would give—a breath, blood, or urine sample. *See* Cal. Veh. Code § 23157 (1997–98) (current version at Cal. Veh. Code § 23162 (2001–2002)); *Nelson,* 143 F.3d at 1201. The Ninth Circuit determined that no exigent circumstances exist justifying the nonconsensual taking of a blood sample from a person who agrees to give a different sample of his or her choice. It stated that:

When an arrestee requests but is denied the choice of an available breath or urine test, the exigency used to justify the warrantless blood test continues only because of the City's failure to perform the requested alternative test. Whenever a DUI arrestee consents to a breath or urine test, and such tests are available, the

¶ 37. The exigency upon which a warrantless blood draw is premised is the dissipation of alcohol in the blood stream. *See Schmerber,* 384 U.S. at 770–71; *Bohling,* 173 Wis. 2d at 539–40. An arrested person's offer to submit to one chemical test rather than another does not slow this dissipation. The evidence remains on a course to be destroyed.

¶ 38. The evidence continues to dissipate during any time that elapses while the person is transported from a hospital to the site of the instrument for testing breath alcohol. It continues to dissipate during any wait for the arrival of a certified instrument operator. *See* Wis. Admin. Code § TRANS 311. It continues to dissipate if the person conveniently regurgitates immediately before the breath test is to be administered so that

administration of either the breath or urine test would preserve the evidence and end the exigency.

*Nelson,* 143 F.3d at 1205.

*Nelson* is distinguishable from this case because in *Nelson,* the drivers did not withdraw their consent to give some sample under the statute. They had a statutory right to provide a sample of their choice. Because several of the drivers offered to provide precisely what the statute required, in the manner the statute required, no exigent circumstances existed to allow the officers to require a different type of test. We believe the decision assumes that the drivers will fully cooperate and take the tests. Wisconsin's implied consent law does not grant drivers a statutory right to choose which test will be administered. *See State v. Wodenjak,* 2001 WI App 216, ¶ 13 n.8, 247 Wis. 2d 554, 634 N.W.2d 867. In Wisconsin, a driver impliedly consents to take the test requested by a law enforcement officer. When the driver refuses to take that test, the driver has withdrawn his or her consent—officers must yield to that decision or proceed in a lawful manner outside the statute.

119

the certified operator must wait for 20 minutes before the collection of a breath specimen.[16] It continues to dissipate if the person fails to give a sufficient breath specimen and/or if the person has a change of heart and refuses altogether to submit to a test.

¶ 39. There is no assurance that a person who refuses to consent to a blood draw under the implied consent statute and refuses to give consent to a blood draw outside the implied consent statute will peacefully cooperate with authorities in submitting to a breath test. In *State v. Krause,* 168 Wis. 2d 578, 484 N.W.2d 347 (Ct. App. 1992), a driver with three OWI convictions refused and resisted law enforcement efforts to secure a chemical test following his arrest for a fourth drunk driving incident. When the driver learned that the police intended to secure a blood sample, he became violently upset, stating that he did not "believe in needles" and did not want to get AIDS. At least three sheriff's deputies were required, at the hospital, to subdue the driver, placing a pillowcase over his head, tying down his feet, and holding his arms while a medical technician drew blood. *Id.* at 585. The court upheld the reasonableness of the search. The truth is,

---

[16] Wisconsin Admin. Code § TRANS 311.06 (1997), provides in relevant part:

(3) Procedures for quantitative breath alcohol analysis shall include the following controls in conjunction with the testing of each subject:

(a) Observation by a law enforcement person or combination of law enforcement persons, of the test subject for a minimum of 20 minutes prior to the collection of a breath specimen, during which time the test subject did not ingest alcohol, regurgitate, vomit or smoke.

the officers would have had equal or greater difficulty obtaining a valid breath sample from such a recalcitrant person.

¶ 40. The exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken. Securing a breath test rather than a blood test may not be satisfactory to law enforcement because an officer may want to determine whether the person is also under the influence of controlled substances. Blood samples are the most direct means of measuring alcohol concentration in the blood *and* of obtaining evidence of controlled substances in the blood. A breath test is not likely to reveal the presence of a controlled substance. In 1994 the court of appeals reviewed a case in which a driver's blood test showed a blood alcohol concentration of only .049% but the concurrent presence of tetrahydrocannabinol (THC), the active ingredient in marijuana.[17] Having a breath test in hand in that instance would not have eliminated the exigency.

¶ 41. Even when a person submits to a breath test in lieu of a blood test—outside the provisions of the implied consent statute—the test may be subject to challenge on grounds that the person's consent to the test was not given freely and voluntarily. *State v. Fillyaw,* 104 Wis. 2d 700, 716, 312 N.W.2d 795 (1981).

[17] *See State v. Sanders,* No. 93–2284–CR, 93–2286–CR, unpublished slip op. (Wis. Ct. App. Sept. 8, 1994). Unpublished opinions of the court of appeals have no precedential value and may not be cited as precedent or authority. Wis. Stat. (Rule) § 809.23(3). This case is cited merely to illustrate a potential fact situation.

The person would likely argue that he or she submitted to the breath test because he or she feared needles and had no other choice to avoid a blood draw: it was either a breath test or the feared needle.

¶ 42. A law enforcement officer who arrests a person for operating under the influence has three options for obtaining a *blood* sample from the person. First, the officer may ask the person to submit to a blood draw under the implied consent statute. Second, the officer may order a blood draw based upon exigent circumstances. Third, the officer may seek a search warrant to secure a blood draw.[18] If a person, after refusing a blood test under the implied consent statute, could extinguish the legal basis for a warrantless blood draw merely by agreeing to take a different chemical test, the exigency exception to the warrant requirement would turn upon the *means* used for executing the search rather than the urgency involved in the steady dissipation of alcohol. In effect, the arrested person would dictate the terms of investigation, limiting the police to a single option for a blood test—a search warrant.[19]

---

[18] In normal circumstances, the officer should pursue the first option, requesting and urging a person's cooperation and voluntary compliance under the implied consent statute, before exploring the other options. The officer's incentives for seeking compliance under the implied consent statute are discussed in *State v. Zielke,* 137 Wis. 2d 39, 48–50, 403 N.W.2d 427 (1987).

[19] Obtaining a search warrant to authorize a blood draw may present practical difficulties. The principal difficulty is reaching a judge or court commissioner after normal working hours. Many counties have only one judge. Judges cannot always be found at their office or home.

¶ 43. This is not the law. This court will not vest drivers who have been arrested for operating under the influence with the authority to veto constitutional searches to vindicate their personal choice in police procedure.

¶ 44. The state must show probable cause to arrest a person for a drunk driving offense and probable cause to search that person for alcohol or controlled substance concentration if the state seeks a search warrant for a blood draw. The exigency exception approved in *Schmerber* requires proof of the same two elements, and these elements can be reviewed in a suppression hearing following a warrantless search. Exigency relieves the state of the burden of obtaining a warrant before a search. It does not relieve the state of establishing, in a hearing after the search, that it met the requirements for a constitutional search without a warrant, including the requirement of reasonableness.

¶ 45. Krajewski's arguments do not really bear on exigency. They bear on the reasonableness require-ments in the third and fourth prongs of the *Bohling* test, which the state must satisfy. Under these prongs,

---

In addition, when a law enforcement officer seeks a warrant by telephone under Wis. Stat. § 968.12(3)(d), either the judge or the officer must be at a location with equipment to record the proceedings. This court recently reviewed a case in which the authorities inadvertently failed to record a telephone applica-tion for a warrant. *State v. Raflik*, 2001 WI 129, 248 Wis. 2d 593, 636 N.W.2d 690.

In any event, there is no assurance that a drunk driver presented with a search warrant will abandon his or her resistance and politely submit to a blood test. As Krajewski succinctly put it, he did not want to take a test for alcohol concentration because if he did he would be "[expletive]."

123

the state must show that "the method used to take the blood sample is a reasonable one and performed in a reasonable manner," and "the arrestee presents no reasonable objection to the blood draw." *Bohling,* 173 Wis. 2d at 534.

E. Reasonableness of Blood Test

¶ 46. Krajewski does not dispute that a blood draw can be a legitimate tool for law enforcement officers in a drunk driving case. Rather, he contends that an involuntary blood draw is inadmissible when a person offers "to submit to a less intrusive test."

¶ 47. Krajewski's argument does not attack the method used to secure his blood sample, nor does it suggest a less intrusive method of obtaining a blood specimen from him or others. In fact, he offers no objection to the manner in which the blood draw was performed in this case. Krajewski and the State stipulated that the blood draw was taken in a hospital by a registered nurse. Thus, the blood draw was effected in a reasonable manner. *See State v. Thorstad,* 2000 WI App 199, ¶ 15, 238 Wis. 2d 666, 618 N.W.2d 240. In short, Krajewski has no complaint under the third prong of the *Bohling* test.

F. No Reasonable Objection

¶ 48. Krajewski does offer several objections to his involuntary blood draw under the fourth prong. He contends that he had a fear of needles, that he offered to take a breath test, that he was entitled to take a "less intrusive" test than a blood test when he offered to do so, and that he had a right to refuse medical treatment. We address each of these objections in turn.

124

¶ 49. The circuit court found that "the defendant asked to take a breath test based on fear of needles." The record does not provide evidence that Krajewski explained the basis for his alleged fear; but it does provide evidence—in the testimony of Sergeant Wallace—that Krajewski was reluctant to take *any* chemical test for alcohol concentration and that he eventually submitted to a blood draw without incident. Consequently, while we do not dispute for purposes of this case that Krajewski expressed a fear of needles, we see no reason to treat his alleged fear as different from an articulated preference for a different chemical test.

¶ 50. In *Krause,* the defendant told officers that he did not believe in needles and that he did not want to get AIDS. 168 Wis. 2d at 585. The court of appeals correctly observed that "These isolated comments do not establish that Krause is 'one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing.' " *Id.* at 588 (citing *Schmerber,* 384 U.S. at 771).[20]

¶ 51. The implied consent statute limits the viable excuses of a medical or physical nature for refusal to submit to a chemical test:

> The person shall not be considered to have refused the test if it is shown by a preponderance of evidence that

---

[20] The same conclusion has been reached in other states. *See Stanger v. Department of Revenue,* 780 P.2d 64, 65 (Colo. Ct. App. 1989); *Glazner v. State,* 318 S.E.2d 233 (Ga. Ct. App. 1984); *Borgen v. Director of Revenue,* 877 S.W.2d 172 (Mo. Ct. App. 1994); *Ruch v. Conrad,* 526 N.W.2d 653, 656 (Neb. 1995). Pennsylvania courts have consistently rejected the fear-of-needles justification for refusal. *See Com. D.O.T. Bur. of Dr. Lic. v. Mease,* 610 A.2d 76, 78 (Pa. Commw. Ct. 1991) (citing other Pennsylvania cases).

> the refusal was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of alcohol, controlled substances, controlled substance analogs or other drugs.

Wis. Stat. § 343.305(9)(a)5.c.

¶ 52. We think this provision represents a valid standard to apply in situations outside the statute. It is a standard that will permit a different chemical test for a person who shows that he or she is a hemophiliac or suffers from some other ailment that renders him or her unable to reasonably submit to a blood test. Krajewski has not satisfied this standard. Ironically, a person who alleges fear of needles to prevent a blood draw may in fact be physically unable, as the result of an accident, to submit to a breath test. This is another situation in which exigency clearly remains, even after the person offers to take a different chemical test.

¶ 53. Krajewski objects that it was not reasonable to subject him to an involuntary blood draw when he offered to take a breath test. A similar argument was presented in *State v. Wodenjak,* 2001 WI App 216, 247 Wis. 2d 554, 634 N.W.2d 867, where the driver refused the requested blood test and asked if he could take a breath test. The driver ultimately submitted to a blood draw but argued later that the blood draw was unreasonable and unconstitutional. The court of appeals relied upon *Bohling* and *Thorstad* to reject the driver's position. The court noted that Wodenjak's offer to take a breath test distinguished his case factually from *Bohling* and *Thorstad* but it concluded that the holdings in those cases still apply when a defendant offers to take a different chemical test. *Id.* at 561. We agree.

¶ 54. Wisconsin Stat. § 343.305(2) authorizes tests of "breath, blood or urine, for the purpose of determining the presence or quantity" of alcohol in a person who operates a motor vehicle upon Wisconsin highways. Wisconsin statutes have recognized chemical tests for intoxicants since at least the late 1940s. *See* Wis. Stat. § 85.13(2) (1949–50). Breath, blood, and urine tests are reliable and admissible in evidence. *See* Wis. Stat. § 885.235.

¶ 55. In enacting the implied consent statute, the legislature authorized a law enforcement officer to request his or her choice among these three chemical tests and to request more than one chemical test from a person arrested for a drunk driving offense. In the absence of compelling evidence otherwise, we must presume that the legislature had good reasons for giving law enforcement officers the right to choose among chemical tests. These reasons could include the fact that one test may be better able to detect the presence of controlled substances than another; one test may be more efficacious as evidence before a jury than another; one test may be less susceptible to attack in court than another; one test may be more readily available on any given occasion than another;[21] and tests taken in a hospital permit observation of an intoxicated person by a medical professional before the

---

[21] The court of appeals recently considered a case in which an officer took a driver to a hospital for a blood test after the officer was informed that the county's intoxilizer room was not operational. *See State v. Salm,* No. 01–2443–FT, unpublished slip op. (Wis. Ct. App. Mar. 13, 2002). Unpublished opinions of the court of appeals have no precedential value and may not be cited as precedent or authority. Wis. Stat. (Rule) § 809.23(3). This case is cited merely to illustrate a potential fact situation.

person is taken to jail. These reasons are equally valid for chemical tests taken outside the implied consent statute.

¶ 56. We note that in *Wodenjak,* 2001 WI App 216, ¶ 2 n.3, and in this case, officers testified that they could not remember the two drivers asking for a different chemical test. Courts in both cases accepted the drivers' statements of what they requested. However, many defendants would likely "remember" asking for a breath test after submitting to a blood draw *if* the rule proposed by Krajewski were adopted by this court.

¶ 57. Blood draws to test for alcohol concentration are so commonplace, so accepted, so likely to be reasonable in their execution that a person's mere preference for a different test cannot be viewed as significant in a constitutional sense.

¶ 58. This is also part of the answer to Krajewski's third objection, that he was entitled to take a "less intrusive" test when he offered to do so.

¶ 59. Krajewski points to *Winston v. Lee,* 470 U.S. 753, 759 (1985) for the proposition that a government search should not be "more intrusive than reasonably necessary to accomplish its goals." The proposed search in *Winston* involved surgery under a general anesthetic to remove a bullet lodged in a suspect's chest. The Supreme Court concluded that the "magnitude" of the intrusion made this "search" unreasonable even though it was likely to produce evidence of a crime. *Id.*

¶ 60. We do not perceive the intrusion here and the intrusion in *Winston* as comparable. The intrusion in the usual blood draw is slight and does not constitute an unreasonable law enforcement practice. It does not

threaten the individual's safety or health. Moreover, the Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 663 (1995). *See also U.S. v. Sharpe,* 470 U.S. 675, 686–87 (1985); *Illinois v. Lafayette,* 462 U.S. 640, 647 (1983); *Cady v. Dombrowski,* 413 U.S. 433, 447 (1973).

¶ 61. Krajewski also objects that he is constitutionally entitled to refuse medical treatment if he is willing to submit to a breath test. He cites no authority to support this novel proposition, which if accepted, would justify refusal to submit to a blood draw both under the Fourth Amendment and the implied consent statute. Considering the long history of authorized blood tests in the United States, this objection is meritless. We do not accept it.

¶ 62. To attack the blood test using the *Bohling* factors, Krajewski has made several general objections that could have been offered by any driver arrested for operating under the influence. Acceptance of any one of these general objections by this court would undercut the implied consent statute and create chaotic consequences for enforcement of the law. The objections are artful but they are not reasonable. The surest way for a driver to avoid a blood draw for alcohol concentration is never to drink and drive.

## IV. CONCLUSION

¶ 63. In summary, we reaffirm that the rapid dissipation of alcohol in the bloodstream creates an exigency that justifies a nonconsensual test of the blood, breath, or urine of a person arrested for driving

while intoxicated or other similar drunk-driving related offenses, so long as the test is administered pursuant to the factors enumerated in *Bohling*. Specifically, the blood draw must be taken "to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime," there must be "a clear indication that the blood draw will produce evidence of intoxication," the blood sample must be taken by a reasonable method and in a reasonable manner, and the arrestee must present "no reasonable objection to the blood draw." *Bohling,* 173 Wis. 2d at 534. We further hold that a person's agreement to submit to a test of the person's choice does not negate the exigency, nor render unconstitutional a nonconsensual test of the officer's choice.

¶ 64. We conclude from the facts presented that the nonconsensual blood draw administered to Krajewski complied with the standards established in *Bohling,* as it was taken to obtain evidence of intoxication after Krajewski was arrested for driving while intoxicated, there was probable cause to believe that the blood draw would produce evidence of intoxication, the blood sample was taken in a reasonable manner, and Krajewski presented no reasonable objection. The blood draw was therefore reasonable and constitutional.

¶ 65. We therefore affirm the court of appeals decision which summarily reversed the circuit court order granting Krajewski's motion to suppress the results of the blood test administered in this case.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 66. ANN WALSH BRADLEY, J. *(dissenting).* The majority sets forth a blanket rule employing the exigent circumstances exception allowing forced

blood draws in OWI cases. Such a blanket exception to the warrant requirement runs afoul of the Fourth Amendment, and renders meaningless the option of ever securing a search warrant for an OWI blood draw. In addition, I write separately to clarify any implication in the majority opinion that exigent circumstances might exist in cases where it is a controlled substance, not alcohol, that allegedly forms the basis for an arrest. Accordingly, I respectfully dissent.

¶ 67. In *State v. Bohling,* 173 Wis. 2d 529, 539, 494 N.W.2d 399 (1993), this court determined in a 4–3 decision that exigent circumstances in OWI cases are based "solely on the fact that alcohol rapidly dissipates in the bloodstream." At the same time, and somewhat inconsistently, the *Bohling* court set forth four factors that must be satisfied for the police to forego a warrant:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

173 Wis. 2d at 533–34 (footnote omitted).

¶ 68. The dissent in *Bohling* observed that "the majority opinion holds that the exigency created by the dissipation of alcohol makes seizure of a blood sample without a warrant reasonable per se under the Fourth Amendment." 173 Wis. 2d at 548 (Abrahamson, J., dissenting). Although the dissent acknowledged that the exigent circumstances exception may be applied to the seizure of blood, it rejected the *Bohling* majority's blanket exception to the warrant requirement, concluding that law enforcement officers and courts must

131

examine the facts on a case-by-case basis to satisfy the Fourth Amendment. *Id.* at 549–550.

¶ 69. After *Bohling,* this court devised another blanket exception to the Fourth Amendment based on exigent circumstances. In *State v. Stevens,* 181 Wis. 2d 410, 425–26, 511 N.W.2d 591 (1994), the court held that based on the destructibility of the evidence, a no-knock search is reasonable any time the police have a warrant, supported by probable cause, to search a residence for evidence of drug dealing.

¶ 70. Subsequently, in *Wilson v. Arkansas,* 514 U.S. 927, 930 (1995), the U.S. Supreme Court concluded that the common law knock and announce principles form a part of the Fourth Amendment reasonableness inquiry. In reaching its conclusion, the Court in *Wilson* peppered its decision with language warning that blanket exceptions to the knock and announce requirement were impermissible.

¶ 71. After *Wilson,* this court decided *State v. Richards,* 201 Wis. 2d 845, 549 N.W.2d 218 (1996). The court in *Richards* explained that it took the case to address the vitality of *Stevens* in light of the Supreme Court's warning in *Wilson. Id.* at 848. Nonetheless, this court did not heed the warning. It reaffirmed the *Stevens* rule, holding that exigent circumstances were always present in the execution of search warrants involving felonious drug delivery, based in part on the potential for the disposal of drugs prior to entry by the police. *Id.* at 847–48.

¶ 72. The U.S. Supreme Court promptly overturned us, abrogating the blanket rule. *See Richards v. Wisconsin,* 520 U.S. 385 (1997). The Court concluded that a concurring opinion in *Richards,* not the majority, had correctly stated the law under the Fourth Amendment. *Id.* at 391, 395. The concurring opinion repeated

132

the concerns of the dissent in *Bohling,* emphasizing that the Fourth Amendment requires an assessment of reasonableness based on the facts of each particular case. *Richards,* 201 Wis. 2d at 878 (Abrahamson, J., concurring).

¶ 73. The Supreme Court's decision in *Richards* thus calls into question the basis for *Bohling. Richards,* along with this court's statement in *Bohling* that exigent circumstances in OWI cases are based "solely on the fact that alcohol rapidly dissipates in the bloodstream," *Bohling,* 173 Wis. 2d at 539, suggests that *Bohling* embodies an impermissible blanket exception to the warrant requirement.

¶ 74. This blanket exception in *Bohling* may have been blurred by the court's articulation of the four factors that must be satisfied to justify a warrantless blood draw. At least some of these factors suggested that the determination of whether a given warrantless search was reasonable remained case-by-case based on individualized circumstances.

¶ 75. Today's majority opinion brings *Bohling* into focus. In practice, application of the four factors rarely, if ever, results in an individualized determination of reasonableness, and the exigent circumstances exception for blood draws in OWI cases embodies the type of blanket rule forbidden under *Richards.*

¶ 76. The first and second of the four *Bohling* factors amount to no more than probable cause to arrest for drunk driving. However, probable cause is already a requirement under the exigent circumstances exception to the warrant requirement. *See State v. Hughes,* 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621.

¶ 77. The third factor has been held to be satisfied by any taking of blood in a "medical setting" or "medical

133

environment." *State v. Wodenjak,* 2001 WI App 216, ¶ 12, 247 Wis. 2d 554, 634 N.W.2d 867, *review denied,* 2001 WI 117, 247 Wis. 2d 1036, 635 N.W.2d 784 (unpublished table decision); *State v. Thorstad,* 2000 WI App 199, ¶ 15, 238 Wis. 2d 666, 618 N.W.2d 240, *review denied,* 2000 WI 121, 239 Wis. 2d 310, 619 N.W.2d 93 (unpublished table decision). In reality then, the blood draw will satisfy this factor in virtually all cases.

¶ 78. Thus, the fourth factor is the only one that might seem to suggest that warrantless blood draws in OWI cases would remain subject to a case-by-case, particularized reasonableness determination as required by the Fourth Amendment. However, the majority has eviscerated that factor today.

¶ 79. The majority adopts the statutory standard for refusal under the implied consent statute as the constitutional standard for a reasonable objection. Majority op. at ¶¶ 51–52. Under this standard, the only reasonable objection is a physical inability to submit to the test. This standard leaves no room for, among other things, a legitimate objection based on religious grounds. Thus, only in the most rare of cases will the fourth factor ever preclude a warrantless blood draw.

¶ 80. Any veil of uncertainty created by disparate language within *Bohling* is lifted by the majority opinion. Under the majority's opinion, if not also before it, the exigent circumstances exception for blood draws in OWI cases is a blanket rule that runs afoul of *Richards.*

¶ 81. Moreover, the majority's blanket rule runs afoul of its own framework. The majority opinion states that a law enforcement officer who arrests a person for operating under the influence has "three options for obtaining a blood sample," one of which is that the officer "may seek a search warrant to secure a blood draw." Majority op. at ¶ 42. However, because an officer

may now obtain a forced blood draw without a warrant in virtually every case where the suspect refuses the test, the availability of this third "option" is rendered meaningless.

¶ 82. Finally, I note that the majority opinion discusses obtaining a blood draw to test for controlled substances. The majority states: "Securing a breath test rather than a blood test may not be satisfactory to law enforcement because an officer may want to determine whether the person is also under the influence of controlled substances." Majority op. at ¶ 40.

¶ 83. The majority's discussion referencing testing for controlled substances needs clarification to the extent it might be interpreted as an endorsement of any future application of the exigent circumstances exception to testing for controlled substances.

¶ 84. First, to the extent the majority's discussion of controlled substances makes such a suggestion, it is dicta. The case before us did not involve any alleged controlled substance use.

¶ 85. Second, and more importantly, any suggestion that the exigent circumstances exception should apply to testing for controlled substances is inapposite to the emergency nature of the exception. Citing *Schmerber v. California,* 384 U.S. 757, 770–71 (1966), the majority emphasizes that the "dissipation of alcohol in the blood stream constituted an emergency because it threatened the destruction of evidence." Majority op. at ¶ 27 (internal quotations omitted).

¶ 86. The same purported threat of rapid destruction of evidence may not be present when considering controlled substances. Indeed, evidence of controlled substance use generally dissipates much more slowly from the body than evidence of alcohol use. *See State v. Jones,* 895 P.2d 643, 644 (Nev. 1995); Emily J. Sovell,

135

*State v. Hanson: Has the Exigent Circumstances Exception to the Warrant Requirement Swallowed the Rule?*, 45 S.D. L. Rev. 163, 185 (2000).

¶ 87. In sum, the majority opinion sets forth a blanket rule under the exigent circumstances exception allowing warrantless blood draws in OWI cases. Because the Fourth Amendment does not countenance such a blanket rule, I respectfully dissent.

¶ 88. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this dissent.