COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2016AP1621-CR**
                  **2016AP1622-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2010CF5710
2011CF1521

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

        PLAINTIFF-RESPONDENT,

    V.

COREY BENSON,

        DEFENDANT-APPELLANT.

        APPEALS from judgments and an order of the circuit court for Milwaukee County:  DAVID L. BOROWSKI and M. JOSEPH DONALD, Judges. *Affirmed*.

        Before Brash, P.J., Brennan and Dugan, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Corey Benson, *pro se*, appeals from judgments, entered upon a jury's verdicts, convicting him on one count of child abuse, one count of child neglect, one count of first-degree intentional homicide, and two counts of felony bail jumping.  Benson also appeals from an order denying his postconviction motion without a hearing.  Benson complains that the two underlying circuit court cases were improperly joined and that he received ineffective assistance from trial counsel.  We reject Benson's challenges and affirm the judgments and order.

## BACKGROUND

¶2      Around September 2010, Benson began dating W.F., who had a two-year-old son, K.C.  On October 25, 2010, W.F. asked Benson to pick K.C. up from daycare because she was working until 8:30 p.m.; Benson agreed.  W.F. then called Benson for a ride after she finished work.  When Benson picked her up, he told her that K.C. had suffered a bruised stomach while the two were playing football.  When they arrived home, W.F. checked her son's stomach and noted it was purple around the navel.  K.C. was also limp and lethargic.  W.F. and Benson took K.C. to the hospital, where it was determined that he had suffered multiple liver lacerations, extensive abdominal bruising, and massive internal injuries, including a spleen injury.  K.C. was hospitalized for six days.  The consulting physician reported that such a presentation "is virtually diagnostic of abusive or inflicted abdominal trauma" and could have easily resulted in K.C.'s death had W.F. not sought medical attention for him.

¶3      On November 11, 2010, Benson was arrested in his home without a warrant; a circuit court commissioner found probable cause the following day.  Someone posted Benson's $25,000 cash bail.  On November 15, 2010, the State

2

filed a criminal complaint in Milwaukee County Circuit Court case No. 2010CF5710 (the 2010 case), charging Benson with one count of child abuse by intentionally causing great bodily harm and one count of child neglect resulting in bodily harm. At an initial appearance on November 15, 2010, Benson was ordered to have no contact with W.F. and K.C. Benson's bail was also reduced to $15,000.

¶4 On April 2, 2011, Benson walked into a hospital with an unresponsive K.C. in his arms. K.C. was fully clothed, warm to the touch, and dry except for a spot on the front of his pants, which was consistent with K.C. urinating on himself. When the trauma nurse asked what had happened, Benson told her that he found K.C. face down in the bathtub. When medical personnel attempted to intubate K.C., they encountered chewed, undigested food in his throat; Benson said that he had fed K.C. breakfast before putting him in the bathtub. Benson told hospital staff that he changed K.C. into clothes and brought him to the hospital instead of calling 911. While in the room where staff were attempting to revive K.C., Benson reportedly repeated to himself, "[H]ow am I going to explain this?"

¶5 Efforts to resuscitate K.C. failed, and police were called for a "dead on entry" complaint. A nurse reported to one officer that she had observed three bruises, one as large as a half-dollar, on K.C.'s forehead. A responding detective observed K.C.'s body and noted his opinion that "it was apparent that K.C. was beaten or abused causing injury to K.C.'s head, specifically swelling and contusions." The medical examiner's report later noted:

> blunt force trauma to K.C.'s head and neck; contusions to K.C.'s head; lacerations to K.C.'s oral mucosa and hemorrhage of the frenulum; blunt force trauma to K.C.'s thorax, abdomen, and pelvis; compression injuries to

3

K.C.'s chest, abdomen, and buttocks; hemorrhages and hematomas of muscles in the buttocks; compressions and edema of the scrotum; [and] blunt force trauma to the lower extremities, including acute hemorrhages of muscles within the lower extremities.

The medical examiner concluded that K.C. was "a child with multiple blunt force injuries resulting in his death, a homicide." On April 7, 2011, the State charged Benson in Milwaukee County Circuit Court case No. 2011CF1521 (the 2011 case) with one count of first-degree reckless homicide and two counts of felony bail jumping.

¶6     In light of the new charges, the State moved to modify Benson's bail in the 2010 case. Benson's attorney in the 2010 case also moved to withdraw on the grounds that Benson was in arrears and would not be able to comply with the remaining payment terms. At the bail hearing date, Benson was not produced. Benson's bail was increased to $250,000, but the motion to withdraw was rescheduled so Benson could be present. At the withdrawal hearing, Benson indicated that he wanted to retain the attorney for both cases, but counsel was skeptical that Benson could secure the funds.[1] Counsel was allowed to withdraw. Attorney Ann Bowe was eventually appointed by the Office of the State Public Defender to represent Benson. A preliminary hearing was held for the charges in the 2011 case, and Benson was bound over for trial.

¶7     In May 2011, the State moved to join the two cases. Attorney Bowe objected, noting among other things that Benson planned to testify in the child

---

[1] Counsel's retainer had evidently been paid by the same person who posted Benson's initial $25,000 bail.

4

abuse case but not in the homicide case and contending that joinder would be more prejudicial than probative. Joinder was ultimately granted.

¶8 In June 2011, Attorney Bowe moved to withdraw as counsel; that request was granted and Attorney Michael Hicks was appointed. Attorney Hicks moved to suppress statements Benson made to police on or after October 25, 2010, based on alleged violations of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (right to remain silent), or *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (right to counsel during interrogation). The State sought clarification on whether Attorney Hicks would also be seeking to challenge the joinder decision, which had been made by a different judge while Attorney Bowe was on the case. The trial court indicated that it did not plan to revisit the joinder decision, and Attorney Hicks later confirmed he would not be challenging the joinder decision.[2] The *Miranda/Edwards* motion was eventually denied.

¶9 The day of the trial court's decision on the *Miranda/Edwards* motion, the parties also had a discussion regarding the State's potential amendment of the first-degree reckless homicide charge to first-degree intentional homicide. The trial court ultimately allowed the amendment. However, an issue arose regarding Attorney Hicks, who, while on the public defender's list as certified to represent individuals for up to Class B felonies, was not on the public

---

[2] By this point, the cases had been transferred to the Honorable David L. Borowski, who presided over the trial and sentenced Benson. We will refer to him as the trial court. The Honorable M. Joseph Donald later reviewed and denied the postconviction motion. We will refer to him as the circuit court.

We note that the Honorable Mary Kuhnmuench presided over the 2010 case for a time, and that the Honorable Jeffrey A. Conen presided over both cases for a period of time, including the decision to grant joinder. However, we do not make any additional distinctions in the main text regarding these judges.

5

defender's list of attorneys certified to represent individuals on Class A felonies like first-degree intentional homicide. The trial court determined, however, that the certification was a "hypertechnicality," noting that Attorney Hicks was adequately qualified to represent Benson on the other charges and Benson was facing over 100 years' imprisonment before the charge was amended, so the penalty increase was, practically speaking, not that great. The trial court also commented that "certification" would have simply required Attorney Hicks to fill out some paperwork that would have included obtaining recommendations from judges, and the trial court indicated it would have provided one. The trial court noted that the paperwork would change nothing about its belief that Attorney Hicks was "completely, absolutely able" to try the pending cases.

¶10    As noted, the cases were tried to a jury, and the jury convicted Benson on all five charges: child abuse, child neglect, first-degree intentional homicide, and two counts of felony bail jumping. The trial court sentenced Benson to life imprisonment without the possibility of extended supervision for the homicide, and a combination of concurrent and consecutive sentences on the other charges totaling an additional fifteen years' imprisonment.

¶11    Benson was appointed postconviction counsel, who later moved to withdraw because Benson wanted to represent himself. The motion to withdraw was granted.[3] Benson then filed a *pro se* postconviction motion alleging that he was illegally arrested, the cases were improperly joined, and he received ineffective assistance from Attorney Hicks. The circuit court ordered briefing, but

---

[3] The Honorable Lindsey A. Grady granted postconviction counsel's withdrawal motion.

denied the motion without a hearing. Benson appeals. Additional facts will be discussed as necessary.

## DISCUSSION

¶12     In his appellate brief, Benson raises three issues: an unlawful arrest, improper joinder, and ineffective assistance of trial counsel. The general remedy for an unlawful arrest would be application of the exclusionary rule. *See State v. Smith*, 131 Wis. 2d 220, 240, 388 N.W.2d 601 (1986), *abrogated on other grounds by State v. Felix*, 2012 WI 36, 339 Wis. 2d 670, 811 N.W.2d 775. However, Benson never sought to suppress anything based on his arrest, so any direct challenge to the arrest has been forfeited. *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612. A forfeited error may nevertheless be reviewed within the context of an ineffective assistance claim. *See State v. Langlois*, 2017 WI App 44, ¶17, 337 Wis. 2d 302, 901 N.W.2d 768; *see also State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). Thus, we will review the arrest issue as a part of that discussion. *See id.*

### I. Joinder

¶13     Multiple crimes "may be charged in the same complaint … if the crimes charged … are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan." *See* WIS. STAT. § 971.12(1) (2017-18).[4] Crimes charged in separate complaints may be joined "to be tried

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

7

together if the crimes … could have been joined in a single complaint[.]" *See* § 971.12(4). "The joinder statute is to be broadly construed in favor of initial joinder." ***State v. Salinas***, 2016 WI 44, ¶31, 369 Wis. 2d 9, 879 N.W.2d 609.

¶14 "Whether the initial joinder was proper is a question of law that we review without deference to the trial court[.]" *See* ***State v. Locke***, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993). However, our supreme court "'has historically favored' initial joinder particularly when the charged crimes were all 'committed by the same defendant.'" ***Salinas***, 369 Wis. 2d 9, ¶36 (citation omitted). Initial joinder decisions are broadly interpreted to promote the objectives of the joinder statute: "(1) trial economy and convenience; (2) to promote efficiency in judicial administration; and (3) to eliminate multiple trials against the same defendant, which promotes fiscal responsibility." ***Id.***

¶15 Crimes "are of the 'same or similar character'" if they are "the same type of offenses occurring over a relatively short period of time" with overlapping evidence as to each. *See* ***State v. Hamm***, 146 Wis. 2d 130, 138, 430 N.W.2d 584 (Ct. App. 1988) (citation omitted). Here, the trial court noted that "[t]he only difference between these two cases is the fact that the child unfortunately died in the second case." Although we review initial joinder decisions without deference, we agree that the child abuse/neglect charges are of the same or similar character as the homicide charge. We further note that there was overlapping evidence, in that the victim was the same in both cases, as were the circumstances surrounding K.C.'s injuries, which were allegedly sustained when K.C. was in Benson's exclusive care. Moreover, less than six months had passed between the two cases.

¶16 In addition, the felony bail jumping charges are "connected together" with the other offenses, *see* WIS. STAT. § 971.12(1), because all five

8

crimes involve the same victim and the bail jumping charges are based on Benson's release on bail in the 2010 case at the time he committed the offenses in the 2011 cases. *See Salinas*, 369 Wis. 2d 9, ¶¶42-43.

¶17 Benson protests that the offenses are not of the same or similar character, based on his apparent belief that the "'crimes must be so nearly identical, so unusual and distinctive, as to be like the defendant's signature.'" *See Sanford v. State*, 76 Wis. 2d 72, 86, 256 N.W.2d 348 (1977) (Abrahamson, J., dissenting). Benson is mistaken. The dissent in *Sanford* is discussing use of similar crimes to prove identity of a perpetrator as an exception to the general prohibition against other acts evidence. *Cf. id.* at 78-79 (majority opinion). Identity of the perpetrator is not an issue in this case.

¶18 To the extent that Benson is challenging joinder because joinder might be prejudicial due to the admission of other acts evidence—*i.e.*, admission of the child abuse evidence into the homicide case—we note that that where offenses meet the criteria for initial joinder, "it is presumed that the defendant will suffer no prejudice from a joint trial."[5] *See State v. Leach*, 124 Wis. 2d 648, 669, 370 N.W.2d 240 (1985). Prejudice is generally not a factor for consideration absent a motion to sever. *See Locke*, 177 Wis. 2d at 597. While Benson objected to joinder, he never moved to sever the counts. However, "when evidence of the counts sought to be severed would be admissible in separate trials, the risk of

---

[5] Attorney Bowe argued against joinder because Benson wanted to testify in the child abuse case but not the homicide case. On appeal, Benson complains, briefly, that her argument was "unprepared." We note, however, that requiring a defendant to choose between the right to testify and the right to remain silent is not unconstitutional where, as here, evidence of the joined crimes would be admissible in separate trials. *See State v. Hall*, 103 Wis. 2d 125, 146-50, 307 N.W.2d 289 (1981).

prejudice arising because of joinder is generally not significant." *See id.* Here, the evidence relative to the child abuse and neglect charges would be admissible in the homicide case, and vice versa, at least to show opportunity and absence of mistake or accident. *See id.*; *see also* WIS. STAT. § 904.04(2) (discussing acceptable purposes for admission of other acts evidence).

¶19 Benson also contends that "tainted statements" obtained following his unlawful arrest were used to justify joinder. However, Benson does not identify the "tainted" statements, state how they were used in support of joinder, or indicate where the court relied on the tainted statements in its joinder decision.[6] "We do not consider undeveloped arguments." *State v. O'Connell*, 179 Wis. 2d 598, 609, 508 N.W.2d 23 (Ct. App. 1993).

¶20 In short, the child abuse and neglect charges and the homicide charge are of the same or similar character, and all five charges are connected together. In addition, the crimes were allegedly committed by the same defendant, and joinder of the cases promotes trial economy, judicial efficiency, and fiscal responsibility. *See Salinas*, 369 Wis. 2d 9, ¶36. We therefore conclude the charges in the two cases were properly joined.

## II. Ineffective Assistance of Trial Counsel

¶21 "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges such facts is a question of law. *See id.*, ¶9. If the

---

[6] Further, as we will explain below, the arrest was not unlawful.

motion raises sufficient material facts, the circuit court must hold a hearing. *See id.* If the motion does not raise sufficient material facts, if the motion presents only conclusory allegations, or if the record conclusively shows the defendant is not entitled to relief, then the decision to grant or deny a hearing is left to the circuit court's discretion. *See id.*

¶22 The circuit court has the discretion to deny "even a properly pled motion … without holding an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief." *See State v. Sulla*, 2016 WI 46, ¶30, 369 Wis. 2d 225, 880 N.W.2d 659. "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Id.*, ¶23 (citation omitted). Our review is limited to the four corners of the postconviction motion, not additional arguments raised in the appellant's brief. *See Allen*, 274 Wis. 2d 568, ¶27.

¶23 To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficiency was prejudicial. *See Erickson*, 227 Wis. 2d at 768. To prove deficient performance, "the defendant must identify specific acts or omissions … that fall 'outside the wide range of professionally competent assistance.'" *See State v. Taylor*, 2004 WI App 81, ¶13, 272 Wis. 2d 642, 679 N.W.2d 893 (citation omitted). The test for prejudice is "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Balliette*, 2011 WI 79, ¶24, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted).

11

¶24    A defendant must satisfy both prongs of the ineffective assistance test; we need not address both if the defendant fails to make a sufficient showing on one. *See State v. Maloney*, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583. When it comes to reviewing an attorney's performance, there is a "strong presumption" that counsel's conduct is reasonable. *See State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). An attorney's performance "need not be perfect, nor even very good, to be constitutionally adequate." *See id.*

¶25    In his postconviction motion, Benson alleged that trial counsel was ineffective in four ways. First, he asserts that because Attorney Hicks was "outside the legal rules of the SPD office," he was not "full adequate counsel … as guaranteed by the sixth amendment." Second, Benson contends that "[f]ailure to challenge an unconstitutional arrest made appointed counsel's performance deficient." Third, he complains that Attorney Hicks's failure to "object to the use of the tainted police statements when asked about joinder … is deficient and everything he does is prejudicial[.]" Finally, Benson contends that the amendment of the homicide charge from reckless to intentional "is the stimulant that induced an unprepared and an incoherent 'accident' theory by appointed counsel," a theory that counsel presented to the jury "absent factual and plausible evidence." We address each claim in turn.

A.  State Public Defender Certification

¶26    Benson complains that Attorney Hicks was ineffective for continuing to represent him despite not being certified by the State Public Defender for Class A felony cases. Benson believes that Attorney Hicks was "ineligib[le] to be my constitutional representative at trial."

12

¶27   First, we note that Attorney Hicks was not deficient with respect to his certification:  he informed the trial court of the issue, which the trial court—not Attorney Hicks—determined was not a bar to his continuation as trial counsel. Second, Benson points us to no authority by which Attorney Hicks was disqualified as a matter of law from continuing, particularly when the trial court would not allow him to withdraw.[7]

¶28   Further, we are not persuaded that the trial court erred in maintaining Attorney Hicks as trial counsel.  The State Public Defender maintains a list of attorneys qualified to accept public defender appointments.  *See* WIS. ADMIN. CODE § PD 1.04 (June 2010).[8]  Becoming certified for inclusion on the list generally requires an application form, *see* WIS. ADMIN. CODE § PD 1.03(1), plus other basic requirements, like a license to practice in Wisconsin and residency in the state, *see* WIS. ADMIN. CODE § PD 1.035.  Attorneys who want to accept appointments for misdemeanor and paternity cases have no additional requirements; the additional certification requirements for attorneys who want to accept appointments for other cases vary by case type.  *See* WIS. ADMIN. CODE § PD 1.04(1)-(13).  These additional requirements mainly involve experience and continuing education.

---

[7] We do not mean to suggest that the public defender's certification requirements should be routinely disregarded, as they serve an important purpose in ensuring skilled representation. We hold only that in these cases, Hicks's lack of formal Class A certification was not a bar to his continuation as counsel in light of the trial court's findings regarding Hicks and other facts of these cases.

[8] All references to the Wisconsin Administrative Code are to the version current through June 2010.

¶29 However, certification by the State Public Defender is not a prerequisite to practicing law in this state, nor to accepting a public defender appointment. Indeed, the public defender may allow an attorney's education, training, or experience to substitute for any certification requirements, and the public defender may waive the certification requirements "to assign a case to an attorney who has a prior pending case with the same client." WIS. ADMIN. CODE § PD 1.04(15). Moreover, had Attorney Hicks been privately retained by Benson or appointed at county expense, his certification level with the public defender would be irrelevant.

¶30 The trial court here made an ample record explaining precisely why Attorney Hicks would continue as trial counsel, notwithstanding the change in the felony classification. The trial court noted that the only substantive change when the first-degree reckless homicide charge was amended to first-degree intentional homicide was the maximum total penalty that Benson faced and, as a practical matter, he was already facing an effective life sentence of up to seventy-two years' imprisonment in the homicide case, not including the additional forty-six years' imprisonment he faced in the child abuse case. The trial court also noted that Attorney Hicks had considerable actual experience, and that its experiences with Attorney Hicks as trial counsel satisfied it that Attorney Hicks could continue. We would additionally note that, because Attorney Hicks was certified to represent Benson on the child abuse charges and was already doing so, we have no reason to believe that the public defender would have done anything with the "new" intentional homicide case other than "assign [the] case to [the] attorney who has a prior pending case with the same client." WIS. ADMIN. CODE § 1.04(15). Based on the foregoing, we conclude that Attorney Hicks was not ineffective for continuing as trial counsel.

B. The Warrantless Arrest

¶31     Benson next complains that trial counsel was "deficient" for failing to challenge his warrantless, in-home arrest as unconstitutional.  "A warrantless arrest is not lawful except when supported by probable cause." *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551.  "Probable cause to arrest is the quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999).  "There must be more than a possibility or suspicion that the defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilty is more likely than not." *Id.*

¶32     The record reflects that, at the time of Benson's arrest on the child abuse and neglect charges, police knew, from Benson's own non-custodial statements, that he had been babysitting K.C. and that he had been playing football and roughhousing with K.C.  Police also knew that K.C.'s doctors had advised that his injuries were life-threatening and inconsistent with Benson's version of events.  Further, K.C. had also told his mother at the hospital that Benson had hurt him.  We therefore agree with the State and the circuit court that, taken together, these facts provided probable cause for arrest, so police did not need a warrant to arrest Benson.

¶33     "[E]ven if police have probable cause to arrest a defendant, entering a defendant's home without a warrant to accomplish an arrest violates the Fourth Amendment." *Felix*, 339 Wis. 2d 670, ¶29 (citing *Payton v. New York*, 445 U.S. 573, 590 (1980)).  Thus, Benson also protests the arresting officers' warrantless

15

entry into his home, asserting there were no exigent circumstances and there was ample time for police to obtain a proper warrant.

¶34    "Searches conducted without a warrant are deemed unreasonable per se unless they fall within one of 'a few specifically established and well-delineated exceptions.'" *State v. Krajewski*, 2002 WI 97, ¶24, 255 Wis. 2d 98, 648 N.W.2d 385 (citations omitted).  "Two of the carefully delineated exceptions to the warrant requirement are consent searches and searches based on exigent circumstances." *Id.*    Here, the exigent circumstances exception is irrelevant because Benson consented to the police entry into his home.[9]  It is further of no import that police perhaps could have taken the time to secure a warrant:  a warrant is not required to effectuate an arrest supported by probable cause.  *See* WIS. STAT. § 968.07(1)(d).

¶35    Because the warrantless arrest was supported by probable cause, and because entry into Benson's home was authorized by his consent, any motion to suppress based on a claim of an unlawful arrest would have failed.  "It is well-established that an attorney's failure to pursue a meritless motion does not constitute deficient performance." *State v. Cummings*, 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406 (1996).  Thus, Attorney Hicks was not ineffective for failing to challenge Benson's arrest.

C.  Joinder

¶36    Benson next complains that Attorney Hicks "stood by while tainted evidence was concealed by joinder law."  He complains that Attorney Hicks was

---

[9] In his appellate brief, Benson does not assert that he did not consent to police entering this home.  Rather,  he argues that he never gave consent to be arrested.  However, police did not need consent to arrest him because the arrest was supported by probable cause.

ineffective for not seeking reconsideration of the joinder ruling. However, his claim of "tainted" evidence is based on his belief that his arrest was illegal. As we just explained, it was not, so there was no "tainted evidence."

¶37 In any event, Benson does not identify with any specificity what "tainted evidence" was used or how it resulted in improper joinder. Conclusory allegations are insufficient to garner a hearing on a postconviction motion. *See Allen*, 274 Wis. 2d 568, ¶9. Moreover, we have explained that joinder was proper, and Benson demonstrates no grounds on which a reconsideration motion would have succeeded. Attorney Hicks was not ineffective for failing to pursue a meritless reconsideration motion. *See Cummings*, 199 Wis. 2d at 747 n.10.

D. Amended Charges

¶38 Fourth, Benson complains that Attorney Hicks was deficient for failing to object to the amendment of the homicide charge and that this failure prejudiced him because it resulted in "an unprepared and an incoherent 'accident' theory" of defense. However, the record reflects that Attorney Hicks did, in fact, object to the amendment, arguing that it might be appropriate but only at the close of evidence if the evidence adduced at trial supported the change. Benson does not demonstrate that alternative grounds for objection would have been successful.

¶39 With respect to Benson's claim that the accident defense was undeveloped, he contends:

> Aside from wounding indigent pro se defendant, the jury was bereaved from hearing testimonies from expert and from character witnesses who would have challenged the prosecution's theory. A character witness motion was filed for pro se defendant, although no character witnesses were called on behalf of indigent pro se defendant. It is probable that the factual evidence not used for the defense

17

and unheard by the jury, if presented, would have greatly affected the outcome of the trial.

Benson does not assert *who* these uncalled witness were, *what* they had to say, *why* their testimony was relevant, or *how* that testimony "would have greatly affected the outcome of the trial." *See Allen*, 274 Wis. 2d 568, ¶23 (explaining that a sufficiently pled postconviction motion will allege "who, what, where, when, why, and how"). Again, conclusory allegations in a postconviction motion simply do not suffice.

## III. Summation

¶40 Joinder of the cases was proper: the child abuse, neglect, and homicide charges are of the same or similar character and all five charges are "connected together." Benson's allegations of ineffective assistance are either refuted by the record or too conclusory to require a hearing. Thus, whether to grant a hearing was a matter for the circuit court's discretion. We are unpersuaded that the circuit court erroneously exercised its discretion when it denied a hearing on the motion.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

18