**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 21, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. §  808.10 and RULE 809.62.

Appeal No.     **2024AP281**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022TR1219

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE REFUSAL OF LAYNE PERRY STENBERG:

COUNTY OF TREMPEALEAU,

   PLAINTIFF-RESPONDENT,

 V.

LAYNE PERRY STENBERG,

   DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Trempealeau County: RIAN W. RADTKE, Judge.  *Affirmed*.

        Before Stark, P.J., Hruz, and Gill, JJ.

¶1    HRUZ, J.[1]  Layne Perry Stenberg appeals an order finding that he unreasonably refused to consent to a blood draw when requested to do so by a law enforcement officer, contrary to WIS. STAT. § 343.305(9)(a).  Stenberg argues that § 343.305(2), Wisconsin's implied consent law, is unconstitutional, both facially and as applied to him.  In particular, Stenberg argues that the implied consent law violates the unconstitutional conditions doctrine by requiring him to "forfeit" his Fourth Amendment right to be free from unreasonable searches for the privilege of operating a motor vehicle on a public highway.

¶2    Stenberg also argues that the implied consent law violates the least intrusive means test under the Fourth Amendment.  According to Stenberg, there exist less intrusive means than a blood test by which the government can obtain the evidence it seeks, which the State must use in order to protect his right to be free from unreasonable searches.

¶3    We conclude that Stenberg has failed to meet his burden of proving, beyond a reasonable doubt, that WIS. STAT. § 343.305(2) is unconstitutional. Binding case law is clear that "[t]here is no constitutional issue" with an implied consent statute that "imposes only 'civil penalties,' such as revoking a person's operating privileges, for refusing a warrantless blood draw."  *See* ***State v. Forrett***, 2022 WI 37, ¶8 n.5, 401 Wis. 2d 678, 974 N.W.2d 422 (quoting ***Birchfield v. North Dakota***, 579 U.S. 438, 476-77 (2016)).  We further conclude that the implied consent statute does not operate more intrusively than is reasonably necessary.  Accordingly, we affirm the circuit court's order.

---

[1] This appeal was converted from a one-judge appeal to a three-judge appeal under WIS. STAT. § 752.31(3) and WIS. STAT. RULE 809.41(1) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

**BACKGROUND**

¶4     On July 9, 2022, at 10:20 p.m., Trempealeau County Sheriff's Deputy Osmani Cruz observed a vehicle operating on County Road C without any tail lamps illuminated. After Cruz began initiating a traffic stop, he observed the vehicle cross the road's center line. Cruz also noted that the vehicle took "an extremely long period of time to come to a complete stop," which Cruz believed to be an indication that the driver was "potentially intoxicated."

¶5     Upon approaching the vehicle, Deputy Cruz identified the driver as Stenberg. While speaking to Stenberg, Cruz observed that Stenberg smelled of intoxicants, observed that Stenberg's eyes were glassy and bloodshot, and heard Stenberg slurring his words. Cruz also observed a short glass, "consistent with glasses often found in taverns," on the front passenger seat containing ice and liquid. Stenberg denied drinking alcohol.

¶6     Deputy Cruz asked Stenberg to step outside of the vehicle and to perform several standardized field sobriety tests (SFSTs). After observing multiple clues indicating that Stenberg was intoxicated during Stenberg's performance of the SFSTs, Cruz concluded that Stenberg was under the influence of intoxicants and requested that he take a preliminary breath test (PBT). Stenberg complied and registered a 0.109 on the PBT. Cruz then took Stenberg into custody, searched his vehicle incident to the arrest, and found open bottles of rum inside the vehicle.

¶7     While Stenberg was in the back seat of Deputy Cruz's vehicle, Cruz read to Stenberg the Informing the Accused form, including language stating that Stenberg was deemed to have given his implied consent to a seizure of his blood, breath, or urine by virtue of his decision to operate a motor vehicle on Wisconsin

roadways. After being read the form, Stenberg stated that he would not submit to an evidentiary chemical test of his blood. Cruz then drove Stenberg to a nearby hospital, began applying for a search warrant to obtain a sample of Stenberg's blood, and provided Stenberg with a notice of intent to revoke his operating privilege. Cruz obtained the warrant, and a blood sample was drawn from Stenberg. A test of Stenberg's blood sample yielded a blood alcohol concentration above the prohibited limit.

¶8    Stenberg was charged with operating a motor vehicle with a prohibited alcohol concentration (PAC), contrary to WIS. STAT. § 346.63(1)(b) and as a third offense, and with operating a motor vehicle while intoxicated (OWI), contrary to § 346.63(1)(a) and as a third offense. He also received a citation for refusing to take a test for intoxication after arrest, pursuant to WIS. STAT. § 343.305(9)(a). Stenberg filed a request for a refusal hearing, as well as a motion to declare § 343.305 unconstitutional and to dismiss the PAC charge. Stenberg contended that § 343.305 was unconstitutional, both facially and as applied to him, because it "require[d] an individual to exchange the exercise of a constitutional right for the privilege of operating a motor vehicle on a public highway." The State filed a response to Stenberg's motion, arguing that "there is a well-established precedent that confirms the statute's validity."

¶9    The circuit court entered an order denying Stenberg's motion to declare WIS. STAT. § 343.305 facially unconstitutional but granting his motion to declare § 343.305 unconstitutional as applied to him.[2] The court reasoned that the

---

[2] Stenberg and the circuit court broadly discuss the constitutionality of WIS. STAT. § 343.305. However, both Stenberg's and the court's statements appear to pertain specifically to § 343.305(2) rather than the entirety of § 343.305.

length of the civil penalty Stenberg would suffer for refusing a blood draw—i.e., the revocation of his operating privilege—was longer than the revocation he would suffer upon his conviction for driving drunk had he not refused. The court dismissed Stenberg's citation for refusing to take a test for intoxication after arrest, but it denied Stenberg's motion to dismiss the PAC charge.[3]

¶10 The State filed a motion for reconsideration, arguing that under Wisconsin and federal law, an implied consent law that imposes only civil penalties for refusing a blood draw is constitutional and does not violate the unconstitutional conditions doctrine. Stenberg filed a response brief, arguing that the State failed to meet its burden on the legal standards for granting a motion for reconsideration and contending that his case was distinguishable from those cited by the State.

¶11 The circuit court granted the State's motion, reversed its order declaring WIS. STAT. § 343.305(2) unconstitutional as applied to Stenberg, and concluded that § 343.305(2) did not violate the unconstitutional conditions doctrine and, therefore, was constitutional. The court ordered Stenberg's license revoked for a period of one year, that he undergo an alcohol and drug assessment, and that he install an ignition interlock device in any vehicle he operated for a period of one year. Stenberg now appeals.

## DISCUSSION

¶12 Stenberg argues that WIS. STAT. § 343.305(2), Wisconsin's implied consent law, is unconstitutional, both facially and as applied to him, under the

---

[3] The circuit court did not address the OWI charge in its order.

"unconstitutional conditions doctrine." Stenberg also argues that § 343.305(2) is unconstitutional because it fails to meet the least intrusive means test found within Fourth Amendment jurisprudence.[4]

¶13 "The constitutionality of a statute is a question of law that we review de novo." *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. Legislative enactments are generally entitled to a presumption of constitutionality. *State v. Cole*, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. A petitioner seeking to prove a statute unconstitutional faces a "heavy burden" of proving that the statute is unconstitutional beyond a reasonable doubt. *Id.* "If any doubt remains, this court must uphold the statute as constitutional." *Id.*

¶14 To prove that a statute is facially unconstitutional, the petitioner "must show that the law cannot be enforced 'under any circumstances.'" *Wood*, 323 Wis. 2d 321, ¶13 (citation omitted). In an as-applied challenge, we consider the facts of the particular case in front of us, and the petitioner "must show that his or her constitutional rights were actually violated." *Id.*

¶15 The unconstitutional conditions doctrine was set forth in *Frost v. Railroad Commission of State of California*, 271 U.S. 583, 593-94 (1926), where the United States Supreme Court held,

> It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.

---

[4] Stenberg does not challenge the circuit court's denial of his motion to dismiss the PAC charge.

¶16    It is undisputed that a person has the constitutional right to be free from unreasonable searches and seizures, U.S. CONST. amend. IV, that the taking of a blood sample is a search, **Birchfield**, 579 U.S. at 456, and that "warrantless searches are 'per se unreasonable,' unless some exception to the Fourth Amendment's warrant requirement applies," **Forrett**, 401 Wis. 2d 678, ¶6 (citation omitted).

¶17    WISCONSIN STAT. § 343.305(2) provides,

> Any person who … drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in [WIS. STAT. §] 346.61, is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b).

"If a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege." Sec. 343.305(9)(a).

¶18    Stenberg argues that WIS. STAT. § 343.305(2) is unconstitutional because it requires him to exchange his constitutional right to be free from unreasonable searches for the privilege of operating a motor vehicle in Wisconsin. We disagree.

¶19    As the State argues, Wisconsin's implied consent law simply does not operate in the manner Stenberg claims it does. Rather, if anyone in circumstances similar to those in which Stenberg found himself refuses to grant consent to a requested and informed blood draw, (a) that person will only face

potential *civil* penalties for that refusal, and (b) the State will be able to draw the person's blood only *after* obtaining a judicially issued warrant to do so. A person given the choice of whether to consent to a blood draw never sacrifices his or her right to be free from an *unreasonable* search or seizure. *Cf.* ***Blackburn v. Snow***, 771 F.2d 556, 568 (1st Cir. 1985) (holding that a correctional institution's conditioning of a person's ability to visit inmates on his or her submission to a strip search was invalid because it required someone wanting to visit an inmate to sacrifice his or her "right to be free of an otherwise unreasonable … search"). Upon Stenberg's refusal, the State was required to obtain a search warrant to have Stenberg's blood drawn and tested or to obtain the blood sample pursuant to an exception to the warrant requirement. *See* ***State v. Tullberg***, 2014 WI 134, ¶31, 359 Wis. 2d 421, 857 N.W.2d 120 (applying the exigent circumstances exception to the Fourth Amendment). A validly issued warrant satisfies the Fourth Amendment prohibition against unreasonable searches so long as the warrant is reasonably executed. *See* ***State v. Sveum***, 2010 WI 92, ¶19, 328 Wis. 2d 369, 787 N.W.2d 317. Stenberg's arguments regarding the unconstitutionality of the implied consent law ignore the foregoing and therefore fail.

¶20 To elaborate, in the context of implied consent laws and the constitutionality of a state imposing consequences on motorists who fail to comply with those laws, the United States Supreme Court has said,

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a [s]tate not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which

> motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Birchfield*, 579 U.S. at 476-77.  In an appeal regarding Wisconsin's OWI criminal penalty scheme and the impact of counting a prior conviction under WIS. STAT. § 343.305(9)(a), our state supreme court analyzed *Birchfield* and noted that "[t]here is no constitutional issue, however, when a state imposes only 'civil penalties,' such as revoking a person's operating privileges, for refusing a warrantless blood draw."  *Forrett*, 401 Wis. 2d 678, ¶8 n.5 (quoting *Birchfield*, 579 U.S. at 476-77).

¶21     Revocation of an individual's operating privilege is the consequence for failing to comply with Wisconsin's implied consent law.  *See* WIS. STAT. § 343.305(10)(b).  Because this penalty is civil in nature, as opposed to a criminal penalty, *see Forrett*, 401 Wis. 2d 678, ¶8 n.5, the implied consent law does not violate the unconstitutional conditions doctrine.

¶22     Stenberg attempts to distinguish his case from *Birchfield*.  He notes that *Birchfield* concerned whether a state could impose *criminal penalties* for motorists "who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws."  *See Birchfield*, 579 U.S. at 444.  Here, Stenberg is arguing that "it is not permissible … for the State to offer an operating privilege only to those persons who are willing to forgo the right to refuse testing by agreeing to have their exercise of that right penalized—*regardless* of whether that sanction is civil or criminal."

¶23     Stenberg's attempts to distinguish his case from *Birchfield* are both confused and unpersuasive.  While *Birchfield* concerned criminal consequences for the violation of implied consent laws, it expressly contrasted unconstitutional

implied consent laws that impose criminal penalties with constitutional implied consent laws that impose only civil penalties. *See id.* at 476-77. Indeed, the U.S. Supreme Court even noted that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.* Stenberg does not address the foregoing. Further, Stenberg does not address our state supreme court's statement that "[t]here is no constitutional issue … when a state imposes only 'civil penalties' … for refusing a warrantless blood draw." *Forrett*, 401 Wis. 2d 678, ¶8 n.5 (citation omitted).

¶24 There are at least two other problems with Stenberg's arguments, both of which are again derived from his mischaracterization of the implied consent law and the applicable facts. First, WIS. STAT. § 343.305(2) does not actually require a conscious driver to give his or her blood without consent and in violation of the Fourth Amendment. *See State v. Prado*, 2021 WI 64, ¶¶46-47, 397 Wis. 2d 719, 960 N.W.2d 869. Quite simply, if a conscious driver who is read the Informing the Accused form refuses to give consent to the blood draw, the police may apply for a warrant. *See id.*, ¶49. Unless there is a constitutional deficiency with the warrant-issuing process, the warrant itself, or its execution—none of which Stenberg contends happened in his case—a blood draw conducted pursuant to a judicial warrant is constitutional. *See Birchfield*, 579 U.S. at 455-56; U.S. CONST. amend. IV. This scenario is precisely what happened to Stenberg.

¶25 After the State reasonably and clearly explained the foregoing state of the law, Stenberg balked that the State "misapprehends" his arguments. That was hardly the case. Rather than engage with the State's substantive arguments,

Stenberg simply rearticulates in his reply brief what he perceives his actual argument to be, stating:

> [T]he issue [Stenberg] presents is *not* centered about what *later* happens between a law enforcement officer and the accused, but rather, focuses on the *exchange* which occurs between the citizen and the State *at the time of the individual's application for a* license—whether the exchange is constitutional *ab initio*.

Whatever this means,[5] we know it does nothing to make Wisconsin's implied consent law unconstitutional, either facially or as applied to Stenberg. At no time—either when a person seeks or obtains a driver's license from the Department of Motor Vehicles *or* when a suspected drunk driver is asked to give consent for a blood draw pursuant to the implied consent law—is a person required to "forgo" a constitutional right or be unreasonably punished for invoking his or her constitutional right against unreasonable searches.[6]

---

[5] It appears that Stenberg is claiming that when one submits oneself to Wisconsin's implied consent law upon seeking to lawfully operate a motor vehicle in Wisconsin, at that very moment a constitutional violation has occurred. If so, this position is wrong. As noted in our analysis, for purposes of unconstitutional conditions, what matters is whether, ultimately, an individual actually is forced to subject him- or herself to an unreasonable search or seizure in order to operate a vehicle in this State.

[6] The State additionally argues that we should reject Stenberg's argument on the unconstitutional conditions doctrine because "[t]his doctrine applies only to statutes that impose a condition not relevant to the statute's valid purpose." In support thereof, the State cites ***Dolan v. City of Tigard***, 512 U.S. 374, 385 (1994) ("[T]he government may not require a person to give up a constitutional right—here the right to receive just compensation when property is taken for a public use—in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property."), and ***Agency for International Development v. Alliance for Open Society International, Inc.***, 570 U.S. 205, 225 (2013) (Scalia, J., dissenting) ("There is no case of ours in which a condition that is relevant to a statute's valid purpose and that is not in itself unconstitutional (*e.g.*, a religious-affiliation condition that violates the Establishment Clause) has been held to violate the doctrine.").

(continued)

¶26    Stenberg alternatively argues that Wisconsin's implied consent law violates the "least intrusive means test," both as it generally applies to searches and seizures subject to the Fourth Amendment and specifically to gathering evidence of someone's intoxication.  Again, we disagree.

¶27    Under this doctrine, as properly understood, the government is forbidden from infringing upon a fundamental right "unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).[7]  According to Stenberg, and quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983), "When infringing on a right secured by the Fourth Amendment,

---

We are dubious of the State's argument that the unconstitutional conditions doctrine applies only to statutes that impose a condition not relevant to the statute's valid purpose.  First, there appears to be a distinction between the unconstitutional conditions doctrine and the *Dolan* test.  *See Sheetz v. County of El Dorado*, 601 U.S. 267, 275, 279 (2024) (noting that the *Dolan* test is a two-part test "modeled on the unconstitutional conditions doctrine" and distinguishing between the *Dolan* test and the unconstitutional conditions doctrine).  Indeed, the primary application of the *Dolan* test appears to be to the Takings Clause of the Fifth Amendment.  *See Dolan*, 512 U.S. at 385 (noting that the test is analyzing whether the benefit sought by the government has a relationship to the property the government is attempting to acquire); *Sheetz*, 601 U.S. at 279 (applying the *Dolan* test to legislation pursuant to the Takings Clause).  Thus, we question whether the rule argued by the State applies in the criminal, Fourth Amendment context.

Further, even if we found Justice Scalia's dissent in *Agency for International Development* persuasive, we question the extent to which this statement can be applied.  While Justice Scalia noted that, as of the release of *Agency for International Development*, there were no Supreme Court cases concluding that a condition relevant to a statute's valid purpose and not itself unconstitutional violated the unconstitutional conditions doctrine, this observation does not mean that courts *could not* conclude that a condition relevant to a statute's valid purpose violated the unconstitutional conditions doctrine.

The State does not address these concerns in its brief.  However, we need not reach a decision on this issue, as we conclude that Wisconsin's implied consent law is constitutional pursuant to *Birchfield v. North Dakota*, 579 U.S. 438 (2016), and *State v. Forrett*, 2022 WI 37, 401 Wis. 2d 678, 974 N.W.2d 422.  *See State v. Heyer*, 174 Wis. 2d 164, 170, 496 N.W.2d 779 (Ct. App. 1993) ("An appellate court should dispose of an appeal on the narrowest possible ground.").  Thus, we do not address the State's argument in these regards further.

[7]  *Reno* concerned "the Fifth and Fourteenth Amendments' guarantee of 'due process of law'" in the context of alien juveniles unaccompanied by adults being arrested and held in custody pending deportation hearings.  *Reno v. Flores*, 507 U.S. 292, 294, 301 (1993).

the 'methods employed should be the least intrusive means reasonably available to verify or dispel' the suspicion of wrongdoing for which evidence is sought."

¶28    Wisconsin's implied consent law clearly advances the "very important" purposes of incentivizing drivers to cooperate in voluntary chemical testing and removing drunk drivers from the state's highways, both of which purposes have been approved by both our state and federal supreme courts. *Birchfield*, 579 U.S at 466; *see also* *State v. Marshall*, 2002 WI App 73, ¶13, 251 Wis. 2d 408, 642 N.W.2d 571 (explaining that "the implied consent statute provides an incentive for voluntary chemical testing, i.e., not facing civil refusal procedures and automatic revocation"); *State v. Zielke*, 137 Wis. 2d 39, 46, 403 N.W.2d 427 (1987) ("[T]he intent of the legislature in passing the implied consent law was to facilitate the gathering of evidence against drunk drivers in order to remove them from the state's highway[s]."). Stenberg provides no argument to the contrary. Rather, he contends that "the inquiry does not end there because the prevailing standard which undergirds the infringement of a fundamental right *requires* that the government use the 'least intrusive means' to accomplish its end."[8]

---

[8] In so arguing, Stenberg cites only to *Sell v. United States*, 539 U.S. 166 (2003), *State v. Fitzgerald*, 2019 WI 69, 387 Wis. 2d 384, 929 N.W.2d 165, and *Winston v. Lee*, 470 U.S. 753 (1985).

*Sell* and *Fitzgerald*, however, are not Fourth Amendment cases. Rather, they address whether it is constitutional, under the Fifth Amendment Due Process Clause, to involuntarily medicate a mentally ill criminal defendant to restore his or her competency to stand trial. In the course of analyzing that issue, the courts considered only whether "less intrusive" means were unlikely to achieve substantially the same results, not whether the chosen means were the "least intrusive." *Sell*, 539 U.S. at 179; *Fitzgerald*, 387 Wis. 2d 384, ¶16.

(continued)

13

¶29    Stenberg contends that there are at least three less intrusive means by which the State could obtain the evidence it needs: (1) obtaining a search warrant; (2) offering the accused a choice regarding the evidentiary test to which he or she will submit; or (3) designating breath or urine as the primary tests by which it seeks evidence of impairment. We are unpersuaded by Stenberg's assertion that the implied consent statute unconstitutionally violates any of his liberty interests by being more intrusive than reasonably necessary.

¶30    The two potentially applicable cases that Stenberg cites in support of his argument are *Royer* and *Birchfield*. *Royer* applied the least intrusive means test in the context of whether involuntarily detaining an airport traveler "exceeded the limited restraint permitted" by *Terry v. Ohio*, 392 U.S. 1 (1968), at the time his consent to a search was obtained. *Royer*, 460 U.S. at 493-95, 500. In discussing the limitations of a *Terry* stop, the Court stated that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500.

¶31    *Birchfield*, which we have already discussed, concerned whether the Fourth Amendment permitted warrantless breath tests and warrantless blood tests as a search conducted incident to a lawful arrest. *Birchfield*, 579 U.S. at 439-41.

---

*Winston*, meanwhile, stated that the Fourth Amendment's "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston*, 470 U.S. at 760 (citing *Schmerber v. California*, 384 U.S. 757, 768 (1966)). In other words, the case merely restated the well-established issue in such cases, which is whether the means employed were reasonable under the circumstances, as the Fourth Amendment expressly requires—no more, no less.

The Court concluded that warrantless breath tests were permitted, but warrantless blood tests were not. It reasoned that "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test. Respondents have offered no satisfactory justification for demanding the more intrusive alternative without a warrant." *Id.* at 474.

¶32 Contrary to Stenberg's assertion, these two cases do not support his broad argument that obtaining a blood sample pursuant to a search warrant or merely requesting that a person consent to a blood draw is overly intrusive. Stenberg fails to address the fact that *Royer* and *Birchfield* applied the least intrusive means test in very limited circumstances. By way of contrast, in *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985), the Supreme Court analyzed the least intrusive means test in the general context of police action during a *Terry* stop. The Court stated,

> A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, itself, render the search unreasonable." The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*Sharpe*, 470 U.S. at 686-87 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973)). This holding has been characterized as "caution[ing] against further unrealistic application of the requirement a la *Royer*." 4 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(f) (6th ed. 2025). Stenberg does not contend—nor could he under applicable jurisprudence—that law enforcement acted unreasonably by seeking a warrant to

15

obtain a blood sample from him. In fact, it is one of the lesser intrusive means he identifies by which the State could obtain the evidence needed.

¶33    Furthermore, in *State v. Krajewski*, 2002 WI 97, 255 Wis. 2d 98, 648 N.W.2d 385, our supreme court reviewed a circuit court's decision granting a motion to suppress the results of the defendant's blood test, taken on suspicion of OWI. *Id.*, ¶¶4-7. Among other issues, the defendant argued that "it was not reasonable to subject him to an involuntary blood draw when he offered to take a breath test" and that he "was entitled to take a 'less intrusive' test when he offered to do so." *Id.*, ¶¶53, 58.

¶34    The supreme court rejected these arguments, concluding that "[b]lood draws to test for alcohol concentration are so commonplace, so accepted, so likely to be reasonable in their execution that a person's mere preference for a different test cannot be viewed as significant in a constitutional sense." *Id.*, ¶57. The court further reasoned that

> [t]he intrusion in the usual blood draw is slight and does not constitute an unreasonable law enforcement practice. It does not threaten the individual's safety or health. Moreover, the [United States] Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment."

*Id.*, ¶60 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995)).

¶35    Similarly, Stenberg also argues that the implied consent statute violates the least intrusive means test because the State could use the less intrusive means of offering alternative tests or could designate breath or urine as the

16

primary tests by which it seeks evidence of impairment.[9] But, again, our supreme court has already held that the constitution does not require the State to offer "less intrusive" alternatives to blood tests. *See Krajewski*, 255 Wis. 2d 98, ¶¶58-60. Stenberg does not address our supreme court's prior rejection of this argument, even after the State noted its applicability in its response brief. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (holding that "[t]he supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case"). Thus, *Krajewski* controls, and we do not address further Stenberg's arguments in this regard.

¶36 One final point should be made. In arguing that there are less intrusive alternatives to a blood test, Stenberg again misapprehends how the implied consent statute is applied in Wisconsin. Stenberg contends that, instead of the implied consent statute, the State "could select the *preferred* method under the Fourth Amendment to obtain a blood specimen, and that is by warrant." But, as noted above, that is exactly how the implied consent statute works when an officer requests a blood sample under WIS. STAT. § 343.305(2) and a person refuses. *See Prado*, 397 Wis. 2d 719, ¶44 ("In the context of warrantless blood draws, consent 'deemed' by statute is not the same as actual consent…. Generally, in determining whether constitutionally sufficient consent is present, a court will review whether consent was given in fact by words, gestures, or conduct."); *see also Id.*, ¶23 ("[T]he implied consent statute gives those who are capable of responding a choice: submit to the test and risk that the results are presented into court, or refuse

---

[9] We note that PBTs are generally not "admissible in any action or proceeding except to show probable cause for an arrest … or to prove that a chemical test was properly required or requested of a person." WIS. STAT. § 343.303. Stenberg does not address this fact.

17

the test and face license revocation and other civil penalties…. '[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give actual consent to a blood draw when put to the choice between consent or automatic sanctions.'" (quoting *State v. Padley*, 2014 WI App 65, ¶39, 354 Wis. 2d 545, 849 N.W.2d 867)).  Further, this exact procedure was the one that followed after Stenberg refused to give Deputy Cruz consent to obtain a blood sample—i.e., Cruz sought and obtained a search warrant, and he then validly obtained a sample of Stenberg's blood pursuant to the warrant.

¶37   In sum, and for the foregoing reasons, we conclude that Stenberg has failed to prove, beyond a reasonable doubt, that Wisconsin's implied consent statute is unconstitutional—either facially or as applied to him—under the unconstitutional conditions doctrine or the least intrusive means test.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.